**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ROBERT DEAN ELLSWORTH,
        *Defendant-Appellant.*

No. 05-10365

D.C. No.
CR-04-00035-LRH

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
April 6, 2006—San Francisco, California

Filed August 9, 2006

Before: Alfred T. Goodwin, Betty Binns Fletcher and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

9201

**COUNSEL**

Cynthia S. Hahn, Assistant Federal Public Defender, Reno, Nevada, for the defendant-appellant.

Robert Don Gifford, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellee.

---

**OPINION**

FISHER, Circuit Judge:

Robert Dean Ellsworth was convicted of robbery and first degree murder and sentenced to life imprisonment with the possibility of parole by a Nevada state court in 1988. He was paroled after serving 16 years. One year and one day after his release, he was arrested while in the possession of a loaded nine millimeter semiautomatic handgun. A subsequent search of his car and room uncovered additional ammunition and a shoulder holster for the weapon. Ellsworth pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

At the sentencing hearing and over Ellsworth's objection, the district court applied a two-level offense enhancement in accordance with the advisory Sentencing Guidelines because the firearm he possessed was stolen. *See* U.S.S.G. § 2K2.1(b)(4) (2003). The government admitted that it could not prove Ellsworth knew that the gun was stolen, but according to the terms of this particular Guideline, knowledge is not necessary for this offense enhancement to apply. *See id.*; *see also id.* cmt. n.19 ("The enhancement under subsection (b)(4) for a stolen firearm . . . applies whether or not the defendant knew or had reason to believe that the firearm was stolen . . . ."). The district court also increased Ellsworth's criminal history score by two categories because the court found that

the Guidelines' criminal history calculation significantly underrepresented the seriousness of Ellsworth's prior offenses. Accordingly, the district court imposed a 78-month sentence — roughly double the length the probation office had recommended in its presentence report but well within the 10-year statutory maximum for a § 922(g)(1) offense. *See* 18 U.S.C. § 924(a)(2).

Ellsworth appeals the two-level offense enhancement for the stolen gun, arguing that the absence of a scienter requirement for stolen weapons is unconstitutionally irrational given that knowledge is required for possession of stolen explosives. He also challenges the two-category increase in his criminal history score and the overall reasonableness of his sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Standard of Review

We review the constitutionality of a Sentencing Guideline de novo. *See United States v. Marcial-Santiago*, 447 F.3d 715, 717 (9th Cir. 2006). Further, we "review[ ] the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). "Even though the Guidelines are no longer mandatory after . . . *United States v. Booker*, the district court should still consult them for advice as to the appropriate sentence, and we therefore address the merits of" challenges to the district court's interpretation and application of the Guidelines. *Id.* at 1152 (internal citations omitted). "In the absence of Guidelines application error, . . . we will then proceed to address challenges to the reasonableness of the sentence." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

## II. Knowledge that the Firearm Was Stolen

**[1]** Ellsworth contends that the Sentencing Guidelines violate his Fifth Amendment right to equal protection by treating supposedly similarly situated felons differently without a rational basis. Specifically, the Guidelines impose a two-level sentencing enhancement for possession of a stolen *firearm* regardless of knowledge that the firearm was stolen, *see* U.S.S.G. § 2K2.1(b)(4) (2003), whereas the two-level enhancement for possession of stolen *explosives* applies only when "the defendant knew or had reason to believe" the explosives were stolen, *see id.* § 2K1.3(b)(2). Ellsworth argues that the relatively harsher treatment of felons in possession of stolen firearms is irrational because "stolen explosives . . . are far more dangerous" than stolen firearms. We disagree, and hold that the Guidelines' different scienter requirements for stolen firearms and stolen explosives are rationally related to a legitimate government interest and thus there is no equal protection violation.

Both before and after *United States v. Booker*, 543 U.S. 220 (2005), we have applied the rational basis standard of review to equal protection challenges to the Sentencing Guidelines based on a comparison of allegedly disparate sentences. *See Marcial-Santiago*, 447 F.3d at 719 (applying rational basis review to equal protection challenge comparing length of sentences in jurisdictions that had adopted "fast-track" sentencing programs to those in jurisdictions that had not); *United States v. Harding*, 971 F.2d 410, 412 (9th Cir. 1992) (holding that differences in sentences between crack and powder cocaine offenses "implicate[ ] neither a suspect class nor a fundamental right" and therefore rational basis scrutiny is appropriate); *United States v. Fine*, 975 F.2d 596, 604 (9th Cir. 1992) (applying rational basis review to distinction between which offenses are groupable under U.S.S.G. § 3D1.2(d) and which are not, and recognizing that "[t]he Due Process Clause of the Fifth Amendment precludes the imposition of punishment based on arbitrary distinctions, and, in the

sentencing context, 'essentially duplicates' an argument based on equal protection" (quoting *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

**[2]** Under rational basis review, the distinction for sentencing purposes between felons in possession of stolen firearms and those in possession of stolen explosives "must be upheld against equal protection challenge if there is any *reasonably conceivable state of facts* that could provide a rational basis for the classification." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) (emphasis added). It is reasonably conceivable that although explosives are in theory more deadly than firearms when compared on an individualized basis, stolen firearms are more readily obtainable by felons and therefore more deadly than stolen explosives in the aggregate. "Or so the legislature may think." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955); *see also id.* at 487-88 (upholding an Oklahoma law under equal protection rational basis review by positing numerous hypothetical justifications for the law without considering whether or not the legislature actually considered such justifications).

**[3]** Two other circuits have expressly noted the "great dangers" posed by ex-felons in possession of stolen firearms and reasoned that the absence of a scienter requirement in § 2K2.1(b)(4) "reflects this heightened danger." *United States v. Schnell*, 982 F.2d 216, 221 (7th Cir. 1992) (citing *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992)). Relying on *Mobley* and *Schnell*, we have recognized that the two-level enhancement for stolen firearms in § 2K2.1(b)(4) "was promulgated on the premise that stolen firearms are used disproportionately in the commission of crimes" and that "an ex-felon who obtains a stolen firearm is more culpable than one who legally obtains a firearm." *United States v. Goodell*, 990 F.2d 497, 499 (9th Cir. 1993) (relying on rational basis review to uphold § 2K2.1(b)(4) against a due process challenge).[1]

---

[1]The stolen firearm sentencing enhancement analyzed in *Goodell* had been codified as U.S.S.G. § 2K2.1(b)(2) (1990) ("If the firearm was stolen

Further, a "legislature must be allowed leeway to approach a perceived problem incrementally" without violating the Equal Protection Clause. *Beach Communications*, 508 U.S. at 316 (relying on *Williamson*, 348 U.S. at 489). In the late 1980s, the Sentencing Commission decided to remove the scienter requirement from § 2K2.1(b)(4). "[B]oth the structure and the history of the guidelines clearly show that the Sentencing Commission *intended* to omit the element of *mens rea* in § 2K2.1(b)(4)." *Schnell*, 982 F.2d at 220 (emphasis added). The Commission took no such steps to revise § 2K1.3(b)(2), the analogous Guideline enhancement applicable to stolen explosives. The Commission's revision of § 2K2.1(b)(4) and inaction with respect to § 2K1.3(b)(2) may reflect a rational, but incremental, reform of a number of Guidelines concerned with dangerous stolen items in the possession of felons.

**[4]** Lastly, Ellsworth argues that the Sentencing Commission has failed to "bow to the specific directives of Congress" with respect to § 2K2.1(b)(4). *United States v. LaBonte*, 520 U.S. 751, 757 (1997). More specifically, he contends that the Commission's decision to remove scienter from § 2K2.1(b)(4) "is at odds with [Congress'] plain language," *id.* at 757, as expressed in 18 U.S.C. § 922(j), a statute that criminalizes the possession of a stolen firearm by "any person" who "know[s] or ha[s] reasonable cause to believe that the firearm or ammunition was stolen." But unlike the conflict addressed in *LaBonte* between the Sentencing Commission's commentary and Congress' intent, here there is no conflict between the lack of a scienter requirement in the § 2K2.1(b)(4) sentencing enhancement and the scienter requirement in 18 U.S.C. § 922(j).

---

or had an altered or obliterated serial number, increase by 2 levels.") — the enhancement was moved to § 2K2.1(b)(4) in 1991. *See Goodell*, 990 F.2d at 498 n.1. Save for the substitution "any firearm" for "the firearm" and the addition of a comma after "was stolen," § 2K2.1(b)(2) (1990) is identical to § 2K2.1(b)(4) (2003). The slight differences between them are not relevant in this case.

**[5]** Although superficially similar to the statutory offense in § 922(j), § 2K2.1(b)(4) is only a Guideline enhancement and not an independent basis for criminal liability. As applied to Ellsworth, the § 2K2.1(b)(4) enhancement increases the culpability of *felons* in possession of stolen firearms, a much smaller and distinct category of persons than the broad "any person" category covered by § 922(j). Because "Congress has called upon the Commission to exercise its judgment about which types of crimes and which types of criminals are to be considered similar for the purposes of sentencing," *Mistretta v. United States*, 488 U.S. 361, 377-78 (1989), and because Congress expressly intended that "an ex-felon may not legitimately possess *any* firearm," *Goodell*, 990 F.2d at 499 (emphasis added), we cannot infer congressional intent regarding the mens rea requirement for a felon who possesses a stolen firearm from the mens rea requirement for the generic category of "any person" who possesses a stolen firearm.

**[6]** Similarly, the absence of a requirement that a felon who possesses a stolen firearm know that the firearm is stolen is distinguishable from the situation in *Staples v. United States*, 511 U.S. 600 (1994). The defendant in *Staples* did not know that his gun had the requisite characteristics to classify it as a machine gun. *See id.* at 609. However, as discussed above, § 2K2.1(b)(4) was applied to enhance Ellsworth's sentence only after he was convicted of an offense under 18 U.S.C. § 922(g)(1), which prohibits felons from possessing any firearms, not just stolen firearms. Ellsworth never suggests that he did not know that the nine millimeter semiautomatic handgun he possessed was a firearm.

**[7]** The district court did not err in applying the two-level stolen-weapon enhancement.

### III.   Underrepresented Criminal History Score and Reasonableness

Ellsworth next contends that the district court's two-category increase in his criminal history score violated his Sixth Amendment jury trial right, *see Taylor v. United States*, 495 U.S. 575 (1990), and his Fifth Amendment right to due process. Both arguments lack merit. Moreover, Ellsworth's sentence — which the district court based in part on "stale" prior offenses that would not ordinarily be counted towards his criminal history score because they were committed too long ago to be considered under U.S.S.G. § 4A1.2(e) (2003) — was reasonable.[2]

On appeal, Ellsworth argues for the first time that "the district court erred in increasing [his] criminal history category from III to V because no documentation was provided to prove up the priors pursuant to *Taylor* . . . ." Accordingly, we must determine whether that increase in his criminal history score constituted plain error. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.") Because Ellsworth fails the first requirement of plain error review — "that there indeed be an 'error,' " *United States v.*

---

[2]U.S.S.G. § 4A1.2(e) (2003) reads in relevant part as follows:

(e) Applicable Time Period

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted . . . .

*Olano*, 507 U.S. 725, 732 (1993) — his *Taylor* argument is without merit.

Ellsworth misapprehends the instances where the *Taylor* categorical and modified categorical approaches are applicable. We rely upon *Taylor* in the context of sentencing to determine whether a prior conviction fits within the scope of a generically defined crime, such as an "aggravated felony" or a "crime of violence." *See*, *e.g.*, *United States v. Rivera-Sanchez*, 247 F.3d 905, 907 (9th Cir. 2001) (en banc) (sentencing); *cf. Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1057 (9th Cir. 2006) (removal).

[8] However, for the most part a criminal history calculation is not predicated on the commission of an underlying generically defined crime. Instead, the criminal history score looks to the defendant's prior sentence of imprisonment, the length of that sentence, the defendant's parole status and the length of time between his commission of the instant offense and his release from a previous term of imprisonment. *See* U.S.S.G. § 4A1.1 (2003). The *Taylor* problem does not arise when dealing with such criminal history facts because they are independent of the nature of the underlying offense. Only subsection (f) of § 4A1.1 could potentially raise a cognizable *Taylor* issue, because it refers to an underlying prior conviction for "a crime of violence." However, the district court, in evaluating whether Ellsworth's criminal history score was underrepresented due to exclusion of stale offenses, did not rely on § 4A1.1(f). Instead, the court looked to the other subsections of § 4A1.1 to determine what Ellsworth's criminal history score would have been had his previous sentences not been too old to be considered under § 4A1.2(e). *See supra* note 2. Therefore, the district court did not commit a *Taylor* error.

Next, Ellsworth argues that the district court violated his Fifth Amendment due process right when it relied upon what he calls the "unsubstantiated priors" in the presentence report.

However, Ellsworth conceded at the sentencing hearing that the presentence report listing his prior offenses was factually accurate. Accordingly, he has waived any challenge to the accuracy of the presentence report. *See Olano*, 507 U.S. at 733 ("[W]aiver is the intentional relinquishment or abandonment of a known right . . . . [W]aiver . . . extinguish[es] an 'error' under Rule 52(b)." (internal citations and quotation marks omitted)).

**[9]** We understand Ellsworth's final criminal history argument to be a "challenge[ ] to the reasonableness of the overall sentence in light of all the 18 U.S.C. § 3553(a) factors." *Cantrell*, 433 F.3d at 1280. Ellsworth contends that the district court "unreasonably [gave] undue weight to the murder for which Mr. Ellsworth was already being punished in both the State and federal systems" and that, "except for his conviction in Nevada for first degree murder, . . . his criminal history consisted of little more than misdemeanors with one prior felony burglary . . . ." We conclude that the district court did not give undue weight to Ellsworth's murder conviction and that it was reasonable for the district court to increase his criminal history score from a category III to a category V.

In *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006), we recognized that post-*Booker* district courts may now engage in a "broader appraisal . . . of the defendant's history and characteristics for reasons extending beyond the Guidelines" when deciding upon an appropriate sentence. (Internal quotation marks and citations omitted.) The district court properly understood and articulated the role that advisory Guidelines play in sentencing: "[U]nder *Booker* and *Fanfan*, [this court] has a certain amount of discretion to go beyond the guidelines or below the guidelines, but my first obligation is to consider the guidelines." *Accord Kimbrew*, 406 F.3d at 1152 ("Even though the Guidelines are no longer mandatory after . . . *United States v. Booker*, the district court should still consult them for advice as to the appropriate sentence . . . .").

The district court discussed at length "the nature and circumstances of the offense" and Ellsworth's "history and characteristics." 18 U.S.C. § 3553(a)(1).[3] It noted that Ellsworth, "this convicted murderer[, was] seated in the casino with a fully-loaded semiautomatic nine millimeter weapon which [had] recently been stolen from a law enforcement officer." "[T]he presence of the holster [purchased by Ellsworth] and the loading of the weapon suggests that those were intentional acts by Mr. Ellsworth that were designed and intended to allow him to carry a loaded weapon . . . on more than one occasion."

Explaining its decision to consider what Ellsworth's criminal history score would have been were his older convictions added in, the court reasoned that

> [i]t is only because he was in the Nevada State Prison on a life sentence that these prior convictions became stale under the sentencing guidelines and time dated. . . . [N]ormally a defendant who is convicted of first degree murder and sentenced to a life sentence will . . . seldom, if ever, have that conviction come back to be calculated again in a subsequent offense.

The court concluded that Ellsworth's criminal history "closely resembles a V criminal history category as that is applied generally to criminal history V defendants." In reaching that con-

---

[3]The sentencing court does not need to discuss explicitly all of the § 3553(a) factors. *See United States v. Mix*, 450 F.3d 375, 381 (9th Cir. 2006) ("Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." (internal citation and quotation marks omitted)). However, "after *Booker*, the district court still is required to articulate the reasons for the extent of the departure in sufficiently specific language to allow appellate review." *Menyweather*, 447 F.3d at 635 (internal quotations marks omitted). The district court satisfied that requirement here.

clusion, the district court did not give undue weight to Ellsworth's murder and robbery convictions, as Ellsworth suggests. The court was at least as concerned (if not more) about the nature of the instant offense and the length and seriousness of Ellsworth's criminal history as it was about the heinousness of the murder he had committed.

We also disagree with Ellsworth's characterization of his criminal history before his murder and robbery convictions as not being particularly serious, or at least no more serious than that of the defendant in *United States v. Bad Marriage*, 392 F.3d 1103, 1115 (9th Cir. 2004). Ellsworth is plainly a more serious offender than was Bad Marriage — most obviously because of Ellsworth's murder and robbery convictions. Further, his other prior convictions (and terms of imprisonment) for burglary, battery, possession and sale of a switchblade and grand larceny were also serious, especially when considered together. We conclude that the district court's characterization of Ellsworth's criminal history was reasonable: "[I]t's certainly an aggravated criminal history[,] and it reflects both violent and intentional criminal conduct over an extended period of time which is egregious to the point that it certainly supports the upward placement in the V." Therefore the two-category increase in Ellsworth's applicable criminal history score was reasonable as well.

## IV.  Conclusion

The different scienter requirements of the sentencing enhancements for felons in possession of stolen firearms and stolen explosives are rationally related to a legitimate government interest and do not violate the Equal Protection Clause. There was no need for the district court to conduct an analysis under *Taylor v. United States*, 495 U.S. 575 (1990), when it relied on Ellsworth's "stale" prior offenses to increase his criminal history score. Ellsworth's admission during sentencing that the presentence report was accurate precludes his Fifth Amendment due process claim. The sentence imposed

by the district court, based in part on prior offenses that would not ordinarily be counted towards Ellsworth's criminal history score under U.S.S.G. § 4A1.2(e) (2003), was reasonable.

AFFIRMED.