**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

SAHNEEWA TRIMBLE,
            *Defendant-Appellant.*

No. 06-30298

D.C. No.
CV-05-05826-FDB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

Argued and Submitted
March 8, 2007—Seattle, Washington

Filed May 30, 2007

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge O'Scannlain

**COUNSEL**

Jerome Kuh, Assistant Federal Public Defender, Tacoma, Washington, for the appellant.

Barbara J. Sievers, Assistant United States Attorney, Seattle, Washington, for the appellee.

**OPINION**

BERZON, Circuit Judge:

The Bill of Rights was ratified in 1791. The United States produced its first automobile in 1877, and the first traffic ticket issued in 1904.

Fast forward to 2005: Sahneewa Trimble was issued several traffic tickets, fairly serious ones, on a military base. She believed that she was charged too much — more than other drivers who did the same thing on federal property on the same day. When Trimble appeared in court to plead guilty to the violations, the magistrate judge dismissed two of the six original citations but imposed a twenty-five dollar processing fee for three of the remaining ones. Standard stuff, except that some individuals, like Trimble, were charged the fee while the others were not. Why? Because Trimble received a new version of the citation notice and the fortunate others received an older version. So what follows is a tale of two forms, old and new. We reverse — demonstrating, again, that our Constitutional principles protect against monetary injuries large and small. *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 664 n.1, 666 (1966) (striking down $1.50 poll tax);

*McGowan v. Maryland,* 366 U.S. 420, 424 (1961) (considering a constitutional challenge to a five dollar fine).

## I.

When a person has been convicted of a crime, including a traffic offense, the court generally may impose "whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." *Chapman v. United States*, 500 U.S. 453, 465 (1991) (citations omitted). Here, although the twenty-five dollar processing fee was authorized by statute and was neither cruel nor unusual, Trimble argues that it was imposed on her arbitrarily, and therefore violates the equal protection principles incorporated into the Fifth Amendment.[1] *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954); *Vance v. Bradley*, 440 U.S. 93, 94-95 n.1 (1979). Her claim cannot succeed, however, if we can imagine any rational reason for the judge to treat Trimble differently because she received a traffic ticket on a new form as opposed to an old one. *See FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993); *United States v. Ellsworth*, 456 F.3d 1146, 1150 (9th Cir.), *cert. denied*, 127 S. Ct. 753 (2006). Fortunately for Trimble, our imagination does not stretch that far.

## A.

The facts of this case are unremarkable. Trimble received six traffic tickets on July 25, 2005, after police stopped her vehicle on the grounds of Fort Lewis Army Base. The officer

---

[1]Although styled a "processing fee," we treat the twenty-five dollars as part of Trimble's punishment. She incurred it only because she was determined to have broken the law. For the charged offenses on which she was deemed innocent, she was not assessed the fee, even though the cost of "processing" would have been the same. *See United States v. Smith*, 818 F.2d 687, 690 (9th Cir. 1987) ("A punitive measure designed to raise revenue is still a punitive measure.").

on the scene issued the citations on a recently-modified version of the District Court Violation Notice ("DCVN"), the standard form used by federal agencies to issue misdemeanor citations, checking the box to indicate that Trimble was required to appear in court and could not pay a fine by mail.

That same day, other federal officers who issued tickets for similar petty offense traffic violations on federal property used a different, older version of the DCVN. The old forms and new forms were both in circulation at the same time due to a simple, bureaucratic snafu — the government failed to print enough new ones. The change in forms came in response to the Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, div. B, § 308, 118 Stat. 2809, 2895 (2004), which authorized the Administrative Office of the U.S. Courts (AO) to collect a processing fee from defendants to offset the costs of managing petty offense cases in the federal courts. The AO set the fee at twenty-five dollars and, in an attempt to implement it, modified the DCVN to reflect the fee. The new forms were to replace the old ones by July 1, 2005. Many federal agencies, however, were provided with insufficient supplies and continued to use the old forms after July 1.

Although the forms in circulation were different, they were hardly easy to distinguish. Both included space for the usual information — defendant's name, violation, and vehicle description — and both provided directions for contesting the charge or admitting guilt. Again, like most traffic tickets, both forms provided separate directions for the defendant if he or she was required to appear in court. The only material difference between the forms, and the one presumably made to implement the processing fee, was the addition of a line, "+ $25 Processing Fee," to assist those defendants who could pay their fine through the mail in calculating the amount they owed. For those defendants like Trimble, who were alleged to have committed petty offenses rather than mere infractions and were therefore required to appear in court, the new and

old forms offered the same direction: "YOU MUST APPEAR IN COURT."[2]

When Trimble did so, she pleaded guilty to four of the six violations. The magistrate judge dismissed the remaining two counts and imposed one hundred dollars in fines, a twenty-dollar special assessment, and three twenty-five dollar processing fees. Trimble objected to the processing fees. She argued that they violated her equal protection and due process rights, because the judge had not imposed them on other defendants who appeared before him on the same day and received similar citations covering the same time period. The magistrate judge overruled the objection, and Trimble appealed the fee to the district court. In that forum, the government conceded that the magistrate judge imposed the fee only on defendants who received the new version of the DCVN. The district court found nothing wrong with this arrangement. It held that the distinction was rationally related to legitimate government interests — namely, protecting defendants' privacy and generating revenue for the court system. Trimble again appeals.

**B.**

Before we review the reasons the magistrate judge may have decided as he did, we should clarify why this question is the appropriate one. Although this case is a case about two forms, it is not — as the district court believed — a case about the federal law enforcement officers' use of those forms. That is, it does not matter whether there was a good reason for the officer who cited Trimble to use one citation form rather than another. That question is irrelevant for the same reason it would be irrelevant to ask whether the officer had a reason to use a blue or black pen: The answer has no bearing on the laws that applied to Trimble.

---

[2] A copy of the new DCVN is appended to this opinion as Appendix A.

To be sure, the government argues as if its use of the forms is particularly significant. Below, and in its briefs here, it describes the bureaucratic bungle behind the shortage of new tickets and explains why both old and new tickets were used by different officers at the same time for the same infractions occurring in the same location. All of this is besides the point. Driving without insurance and failing to put a child in a seatbelt, two of the charges against Trimble, carry specific fines, regardless of the type of ticket one receives. So, too, does the law authorize the court to impose a fee for *every* petty offense processed, as Trimble's offenses were, through the Central Violations Bureau. *See* Consolidated Appropriations Act, div. B, 118 Stat. at 2895. Although the AO created new forms to correspond to its implementation of the change in law that authorized the processing fees, that law applies to all petty offenses processed in this manner, whether issued on a new form or an old one, using blue ink or black.

## II.

We consider, then, why a court might impose different penalties for similar traffic offenses solely because the defendants received different style citation forms. The district court offered two reasons, neither of which persuade us that imposition of the fee was anything but arbitrary and therefore irrational.

*First*, privacy: The district court held that "the partial utilization of the new forms occurs because of a legitimate government interest; namely, the interest in protecting defendants' personal information as the notice travels through the mail." This explanation is both mysterious and irrelevant. Mysterious, because, while it purports to tell us why the government might rationally encourage officers to use the new forms as they became available, it does not tell us how the new form protected the offender's privacy more than the old one. More importantly, irrelevant — because defendants

charged with petty offenses are required to appear in court, so they never send the forms through the mail anyway.

*Second*, generating revenue: The district court went on to hold that "implementing the new forms" was proper because "collection of the processing fee as to some of the citations written utilizing the new form would begin to offset the costs of managing the cases processed through the Central Violations Bureau." Here, again, the district court asked the wrong question — why the forms were used — and so provided an equally irrelevant answer. If accepted, the district court's reasoning would allow discretionary imposition of fees on *any* class or category, however random: Defendants issued citations on Wednesday must pay the fee, but not those cited on Thursday? Defendants with odd-numbered tickets (or checkered shirts) must pay the fee, but those with even-numbered tickets (or checkered pants) get off scot-free? In either case, no doubt, collection of fees from some offenders but not others would help offset the costs of managing the cases more than not collecting the fees at all. But that truism does not explain why *everybody* similarly situated — here, everybody who had come to court to defend against a petty traffic offense — did not have to pay; that policy would have raised *more* money. And it does not explain why, if only some of the offenders had to pay, it was the Wednesday violators, the odd-number ticket holders, the wearers of checkered shirts — or the recipients of the new form.

Left to our own devices, we can imagine only one promising basis for treating defendants differently based on the form they received: The new forms provided recipients with notice of the fee, while the old forms did not, so the payment distinction serves due process ends. The government so argues. But, as it turns out, that explanation cannot fly either, for two reasons, one obvious and one less so.

The new version of the DCVN does reference the twenty-five dollar processing fee, while the old version does not.

According to the government's argument, individuals like Trimble who received the new form therefore were put on notice that, if convicted of the petty offense, they would be subject to pay that amount.

But telling offenders *after* they have committed an offense what the penalty is for doing so serves none of the usual due process functions served by the notice requirement in criminal law. That notice requirement ensures fairness, *see Free Speech Coal. v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999) (requiring sufficient clarity in the criminal law to guide an ordinarily intelligent person about what is prohibited conduct and protecting against arbitrary government enforcement) *aff'd* 535 U.S. 234 (2002), makes deterrence possible, *see Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1183-84 (9th Cir. 1986) (explaining how notice of Rule 11 sanctions "administers the paramount aim of deterrence"), and avoids *ex post facto* application of criminal prohibitions, *see Bouie v. City of Columbia*, 378 U.S. 347, 354-55 (1964). Telling an alleged offender after the fact what the punishment will be if he is convicted serves none of these purposes.

Still, since we are being imaginative, we could amplify the government's argument so it runs something like this: Defendants who received the new forms appeared in court prepared to pay the processing fee. Conversely, defendants who received an old version of the DCVN, which nowhere references the fee, would not appear in court similarly prepared. Caught by surprise, these defendants might delay court proceedings as they try to recalculate how much they owe the government or find out whether they have an additional twenty-five dollars in their checking accounts. To avoid this potential reduction of courtroom efficiency, the magistrate judge could rationally impose the processing fee only on those prepared to pay it.

However attenuated these supposed benefits of after-the-fact notice of the processing fee, this explanation might be

enough to survive the extremely deferential rational basis standard — were it not for the fact that the new DCVNs actually provide *no* notice of the processing fee to defendants like Trimble. The new forms include three rows that read, from top to bottom: "Forfeiture Amount," "+ $25 Processing Fee," and "Total Collateral Due." But these instructions apply only to defendants who can pay their ticket through the mail and need to calculate the amount they owe. For defendants like Trimble, charged with petty offenses rather than infractions, the new forms simply instruct that they "MUST APPEAR IN COURT." The new form — like the old — does not tell petty offense defendants a thing about what their potential punishment might be. (Apparently, the drafters of the form were not worried about the petty offenders' calculations or bank account dilemmas.) As the reference to the processing fee simply does not apply to defendants like Trimble, it cannot possibly provide a basis for treating them differently. Instead, all defendants appearing in court to answer for a petty offense were left equally in the dark about whether they would have to pay the fee.

**[1]** The net result of our excursion into imaginative recreation of possible justifications is that there is *no* rational, non-arbitrary reason for the new form/old form distinction as applied to petty offenders. As applied to Trimble, new form/ old form is no better a distinction than that between Wednesday/Friday or odd/even. We conclude, consequently, that the magistrate judge violated Trimble's constitutional rights by charging her more than other petty offenders for offenses covering the same time period.

The district court's decision affirming the imposition of the processing fees is therefore **REVERSED** and the fees are **VACATED**.

O'SCANNLAIN, Circuit Judge, concurring in the judgment:

I agree that no rational basis supports the discriminatory imposition of processing fees in this case. However, the majority opinion exceeds the grounds necessary to decide this appeal. Accordingly, I concur only in the judgment.

# Appendix A

**United States District Court**          CVB Location Code
**Violation Notice**

| Violation Number | Officer Name (Print) | Officer No. |
|---|---|---|

## YOU ARE CHARGED WITH THE FOLLOWING VIOLATION

| Date and Time of Offense (mm/dd/yyyy) | Offense Charged  □ CFR  □ USC  □ State Code |
|---|---|

Place of Offense

Offense Description

| DEFENDANT INFORMATION | Phone: ( ) · |
|---|---|

| Last Name | First Name | M.I. |
|---|---|---|

Street Address

| City | State | Zip Code | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|

| Drivers License No. | D.L. State | Social Security No. |
|---|---|---|

| □ Adult  □ Juvenile   Sex  □ Male  □ Female | Hair | Eyes | Height | Weight |
|---|---|---|---|---|

**VEHICLE DESCRIPTION**   VIN:

| Tag No. | State | Year | Make/Model | Color |
|---|---|---|---|---|

A □ IF BOX A IS CHECKED, YOU MUST APPEAR IN COURT. see INSTRUCTIONS (on back of yellow copy).

B □ IF BOX B IS CHECKED, YOU MUST PAY AMOUNT INDICATED BELOW OR APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy).

$ _____ Forfeiture Amount
+ $25 Processing Fee

PAY THIS AMOUNT →   $ _____   Total Collateral Due

## YOUR COURT DATE

(If no court appearance date is shown, you will be notified of your appearance date by mail.)

| Court Address | Date (mm/dd/yyyy) |
|---|---|
| | Time (hh:mm) |

My signature signifies that I have received a copy of this violation notice. It is not an admission of guilt. I promise to appear for the hearing at the time and place instructed or pay the total collateral due.

X  Defendant Signature  _____

Original - CVB Copy