Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge MOTZ joined. Judge DAVIS wrote an opinion concurring in part and dissenting in part.
*341 OPINION
WILKINSON, Circuit Judge:
A jury convicted Daryl Taylor and Antwan Thompson of being felons in possession of a firearm under 18 U.S.C. § 922(g)(1) after they were caught with a loaded handgun on a Baltimore street. The district court imposed an eight-year sentence on Taylor and a fifteen-year sentence on Thompson because his prior convictions qualified him for the mandatory minimum under the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e). We now affirm.
I.
A.
While on street patrol in an unmarked van on the night of May 30, 2008, members of the Baltimore Police Department spotted Taylor standing near the passenger side of an Acura. Taylor’s location was illuminated by multiple streetlights as well as the headlights of the van. Shortly thereafter, one of the officers, Detective Jermaine Cook, saw Taylor reach into his waistband, pull out a silver handgun, and pass it to Thompson through the Acura’s passenger side window. Detective Cook instantly alerted the other three detectives in the van, none of whom were looking in the Acura’s direction at the time.
The van promptly came to a stop. The officers got out of the vehicle and Cook put Taylor under arrest. Thompson, on the other hand, fled from the Acura and was pursued by two of the other detectives. During the chase, one of the officers saw a silver handgun fall out of Thompson’s shorts. The detective recovered the loaded weapon, which had been reported stolen prior to its discovery that evening. Thompson was apprehended soon thereafter.
A jury subsequently convicted both Taylor and Thompson of violating 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing a firearm. Because the handgun was stolen, Taylor’s Pre-Sentence Report (“PSR”) recommended a two-point offense level increase under U.S.S.G. § 2K2.1(b)(4)(A). When added to Taylor’s base offense level of twenty-four points and his Criminal History Category of IV, this enhancement resulted in a Guidelines range of 92 to 115 months. At his sentencing hearing, however, Taylor argued for a lesser punishment. Specifically, he objected to the two-point enhancement because he was unaware that the handgun was stolen. He then contended that a number of mitigating circumstances such as his lack of a history of violence and his efforts to turn his life around also mandated a lesser sentence. Noting that this was “certainly a very serious offense,” the district court rejected Taylor’s contentions and imposed a ninety-six month sentence.
B.
In Thompson’s case, the PSR recommended a fifteen-year minimum sentence under the ACCA because he had previously been convicted twice for controlled substance offenses and once for second-degree assault. Under the ACCA, anyone who violates 18 U.S.C. § 922(g) and has three prior convictions for “violent felon[ies]” or “serious drug offense[s]” must serve a sentence of at least fifteen years. 18 U.S.C. § 924(e)(1). To avoid this mandatory minimum, Thompson argued that his Maryland second-degree assault conviction was not a “violent felony.”
In support of this sentence, the government submitted a transcript of Thompson’s plea colloquy for his assault conviction. According to this transcript, after being informed of his rights, Thompson’s attorney asked him if “it is still your intention *342 to plead guilty?” He responded, ‘Yes, ma’am.” Following this answer, the prosecutor read a statement of facts supporting Thompson’s plea.
According to the prosecution’s report at the plea colloquy, on the night of May 10, 2002, Officers Bateem, Geolamas, and Guzman of the Baltimore Police Department tried to arrest Thompson at a corner store for his involvement in a drug deal. When they approached Thompson, however, he threw a Styrofoam cup filled with liquid at Officer Geolamas, “striking him in the chest area,” “punched Officer Bateem in the mouth,” and “then attempted to flee.”
Officer Guzman was able to grab a hold of the suspect, however, and the two other officers assisted him by “taking [Thompson] down to the ground.” A struggle followed on a concrete sidewalk as the three officers tried to gain control of Thompson’s hands. During the struggle, Thompson swung his arms and kicked his feet and repeatedly attempted to draw his handgun from the waistband of his pants. Despite Officer Guzman’s eventual use of a burst of pepper spray, the officers and Thompson “continued to fight.” Thompson then attempted to grab Guzman’s firearm from his holster, at which point Officer Geolamas put his hands over Thompson’s hands in order to prevent him from acquiring the weapon. “Backup units eventually arrived at the scene and assisted the officers at hand, cuffing Mr. Thompson who continued to struggle in his duress.”
When the prosecutor finished reading this statement, the state judge asked Thompson’s attorney whether she had “[a]ny additions or corrections,” to which she replied, “No, Your Honor.” The court then ruled, “Based on that statement of the facts, Mr. Thompson, I find you guilty of ... assaulting Officer Geolamas.” Thompson’s attorney then turned to her client and asked, “[I]s there anything that you would like to say to the judge? I have spoken on your behalf this morning. You have an opportunity to speak if you’d like to or you can remain silent. Is there anything else you’d like to say?” Thompson replied, “No, ma’am.” During the entire plea colloquy, neither Thompson nor his counsel protested his innocence, disputed his guilt, or disagreed with the prosecutor’s statement of the facts.
After reviewing this document, the federal district court held that the transcript “clearly show[s] a physical assault involving the use of force or violence against a police officer by Mr. Thompson.” It consequently rejected Thompson’s challenge to his ACCA status and sentenced him to the mandatory minimum of fifteen years imprisonment.
C.
On appeal, Taylor challenges both his conviction and sentence. He claims that the jury lacked sufficient evidence to convict him of violating 18 U.S.C. § 922(g)(1), that the lack of a mens rea requirement renders the stolen firearm sentencing enhancement invalid, and that his sentence is substantively unreasonable. Thompson, on the other hand, objects only to his sentence under the ACCA by contending that his Maryland assault conviction does not constitute a “violent felony.” We shall address each appellant and his arguments in turn.
II.
A.
We begin with Taylor and his claim that the jury lacked sufficient evidence to convict him of violating 18 U.S.C. § 922(g)(1). In brief, Taylor contends that there was not enough evidence presented at trial to prove that he actually possessed the stolen *343 handgun. To prove the point, he launches an extended attack on Detective Cook’s credibility. He contends that Cook’s testimony regarding when he first saw Taylor, when the handoff of the gun occurred, and where the van came to a stop results in an incoherent and impossible timeline of events that cannot be squared with the narratives of the other officers. Given that Cook was the only officer who saw the handoff that night, Taylor insists his conviction must be overturned.
As an initial matter, any sufficiency claim bears a heavy burden. We cannot set aside a jury’s verdict if it is supported by substantial evidence when viewed in the light most favorable to the government. See United States v. Robinson, 627 F.3d 941, 956 (4th Cir.2010). Fatal to Taylor’s case is the fact that on appeal, “we are not entitled to assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution’s favor.” United States v. Jeffers, 570 F.3d 557, 565 (4th Cir.2009). At trial, Taylor challenged Cook’s testimony on grounds strikingly similar to those he now presses on appeal. But at the end of the day, the jury rejected Taylor’s arguments in favor of Cook’s testimony.
Moreover, there was ample evidence here to establish Taylor’s possession of the firearm. According to the testimony, multiple detectives saw Taylor standing near the Acura’s passenger side in a well-lit area. While the other officers were looking in another direction, Detective Cook observed Taylor pass a silver handgun to Thompson through the Acura’s window. The other detectives confirmed that Cook immediately alerted them to the handoff. As soon as the officers exited the van, Thompson fled from the Acura and then dropped a silver handgun during his unsuccessful attempt to escape. This evidence would plainly allow a reasonable jury to find Taylor guilty of unlawful possession under 18 U.S.C. § 922(g)(1).
B.
1.
Apart from his challenge to his conviction, Taylor raises two objections to the length of his sentence. He first contests the district court’s application of the Guidelines’ two-point enhancement for possession of a stolen firearm. Section 2K2.1(b)(4)(A) of the Guidelines instructs courts to increase a defendant’s offense level by two points if the firearm involved in a section 922(g) offense was stolen. This enhancement “applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen.” U.S.S.G. § 2K2.1 cmt. n.8(B). Taylor asks that we invalidate this guideline on the grounds that its lack of a mens rea requirement renders it inconsistent with federal law.
This we cannot do. As an initial matter, we note that the stolen firearm enhancement serves an important purpose. The Sentencing Commission “promulgated [this guideline] on the premise that ‘stolen firearms are used disproportionately in the commission of crime.’ ” United States v. Mobley, 956 F.2d 450, 454 (3d Cir.1992) (citation omitted). In light of the fact that stolen firearms change hands both freely and frequently, we would be hard-pressed to discredit the Commission’s judgment that a felon in possession of a stolen firearm should be treated differently from one who possessed a gun through lawful means. See United States v. Ellsworth, 456 F.3d 1146, 1150 (9th Cir.2006) (confirming that a felon in possession of a stolen firearm is more culpable than one who acquires a gun legally because stolen weapons are more frequently used to commit crimes); United States v. Schnell, 982 *344 F.2d 216, 220-21 (7th Cir.1992) (same); Mobley, 956 F.2d at 454(same).
Nor is it fatal that the enhancement lacks a mens rea component. While a preference for mens rea is deeply rooted in our jurisprudence, see Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), the absence of this element is not invariably the final word in criminal law. Instead, as the Supreme Court has observed, “[I]t is not unusual to punish individuals for the unintended consequences of their unlawful acts.” Dean v. United States, 556 U.S. 568, 129 S.Ct. 1849, 1855, 173 L.Ed.2d 785 (2009) (emphasis in original). The felony-murder rule, under which a defendant can be convicted for murder if he commits an unintentional homicide during the course of another felony, is perhaps the most obvious illustration of the point. Id. The idea behind this principle is a simple one: those “wishing to avoid the penalty for” the unintended consequences of their crime should “avoid committing the felony in the first place.” See id. at 1856. This is the situation we have here. Had Taylor chosen not to possess the handgun unlawfully to begin with, he would never have been punished for the possession or spread of stolen firearms.
It is therefore unsurprising that every circuit to have considered a challenge to the sentencing enhancement in section 2K2.1(b)(4)(A) has upheld the guideline. See United States v. Thomas, 628 F.3d 64, 68-71 (2d Cir.2010); Ellsworth, 456 F.3d at 1149-51; United States v. Williams, 365 F.3d 399, 407-08 (5th Cir.2004); United States v. Martinez, 339 F.3d 759, 761-62 (8th Cir.2003); United States v. Murphy, 96 F.3d 846, 848-49 (6th Cir.1996); United States v. Richardson, 8 F.3d 769, 770 (11th Cir.1993); United States v. Sanders, 990 F.2d 582, 584 (10th Cir.1993), overruled on other grounds by United States v. Gomez-Arrellano, 5 F.3d 464, 466-67 (10th Cir. 1993); Schnell, 982 F.2d at 219-21; Mobley, 956 F.2d at 454-59; United States v. Taylor, 937 F.2d 676, 681-82 (D.C.Cir. 1991). The Third Circuit has best captured the reasoning of these courts with its observation that “stolen ... firearms in the hands of people recognized as irresponsible pose great dangers, and the guideline here reflects this heightened danger.” Mobley, 956 F.2d at 454.
In sum, we cannot see how the absence of a scienter requirement works to invalidate the enhancement. An unlawful course of conduct inevitably carries its share of risks. See Dean, 129 S.Ct. at 1855-56 (“An individual who brings a loaded weapon to commit a crime runs the risk that the gun will discharge accidentally.”). Section 922(g)(1) prohibited Taylor from possessing any firearm, whether or not it was stolen. If Taylor were actually concerned about the risk of acquiring a stolen weapon, there was a readily available solution: he could have simply obeyed the law. When he decided not to do so, he assumed the attendant risks of criminal conduct, including the possibility that his newly acquired firearm might be stolen. See United States v. Griffiths, 41 F.3d 844, 845 (2d Cir.1994) (“[T]he government has a legitimate interest in punishing possession of a stolen firearm and placing the burden upon one who receives a firearm to ensure that the possession is lawful.”). For the foregoing reasons, we must decline Taylor’s invitation to invalidate the enhancement in section 2K2.1(b)(4)(A) of the Sentencing Guidelines.
2.
Taylor also claims that his ninety-six month sentence was substantively unreasonable due to mitigating factors and the comparatively innocuous nature of his conduct. We review a district court’s sentence “under a deferential abuse-of-discre *345 tion standard,” Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), and presume on appeal that a sentence within a properly calculated advisory Guidelines range is a reasonable one. United States v. Allen, 491 F.3d 178, 193 (4th Cir.2007). Given that Taylor’s ninety-six month sentence fell within his properly determined Guideline range of 92 to 115 months, we apply that presumption here.
Under the facts of this case, the district court’s sentence falls well within the range of reasonable punishments. Taylor’s instant offense involved dangerous conduct. After illegally obtaining a stolen firearm, Taylor carried this loaded weapon on a Baltimore street before handing it to Thompson through a car window. Taylor’s previous encounters with the law proved to have little or no deterrent effect. And the supposed mitigating circumstances were neither supported nor verified. The trial court’s statement provides a good example of reasoned sentencing discretion:
[I]t seems to me that a sentence of 96 months, which ... is within the advisory guideline range, is sufficient in this case without being greater than necessary. This is certainly a very serious offense .... [A]t this time the gun was not being used in a violent way. I appreciate that. Mr. Taylor, again, at this particular time, was not associated with narcotics. However, unfortunately, Mr. Taylor ... very recently had been released from incarceration following a serious drug offense. He has a prior serious drug offense from when he was much younger, admittedly. But unfortunately, that pattern seemed to have continue[d]. And he was fairly recently released from incarceration when, according to the jury’s verdict, he was found in possession of a loaded, stolen weapon on the streets of Baltimore City, which is a dangerous behavior and requires a significant sanction.
III.
We now turn to Thompson and his challenge to his sentence under the ACCA. As noted, the ACCA imposes a fifteen-year minimum sentence on anyone who both violates 18 U.S.C. '§ 922(g) and has three prior convictions for “serious drug offense[s]” or “violent felon[ies].” 18 U.S.C. § 924(e)(1). Thompson contests neither his section 922(g)(1) conviction nor the fact that his two previous cocaine convictions amount to “serious drug offense[s].” See 18 U.S.C. § 924(e)(2)(A). His sole argument on appeal is that the district court erred in concluding that his third predicate conviction for Maryland second-degree assault constitutes a “violent felony.”
A.
The ACCA defines “violent felony” in two ways. The district court relied on only one of them. Specifically, it found that Thompson’s assault conviction qualified under the “force clause” of the ACCA, which defines a “violent felony” as an offense which “has as an element the use, attempted use, or threatened use of physical force against the person of another.” Id. § 924(e)(2)(B)(i).
While the preferred framework for addressing whether prior convictions qualify as ACCA predicates is the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 600-02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), under which we consider simply the statutory elements of the offense and the fact of conviction, our precedent forecloses that option here. The Maryland statute prohibiting second-degree assault provides that “[a] person may not commit an assault,” which in turn is defined as “the crimes of assault, battery, and assault and battery, which retain *346 their judicially determined meanings.” Md. Code Ann., Crim. Law §§ 3 — 201(b), -203(a). Because this definition is so broad, we have frequently recognized our inability to discern from a conviction and the statute’s elements alone whether a defendant actually committed a violent felony. See United States v. Alston, 611 F.3d 219, 222-23 (4th Cir.2010) (using modified categorical approach to determine whether Maryland second-degree assault qualifies as a violent felony); United States v. Harcum, 587 F.3d 219, 224 (4th Cir.2009) (same).
The district court was therefore correct to employ the modified categorical approach set forth in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), to guide its analysis. See Harcum, 587 F.3d at 224. Under this approach, courts must decide whether Shepard-approved materials such as the “charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented” show that Thompson “necessarily admitted” to committing a violent felony. See Shepard, 544 U.S. at 16, 125 S.Ct. 1254.
B.
We cannot find fault with the district court’s application of the modified categorical approach in this case. To begin, the trial court considered only Shepard-approved documents in reaching its conclusion, namely the “transcript of [Thompson’s] plea colloquy.” See id.
That transcript portrays what can only be described as a “violent felony.” According to the Supreme Court, the term “physical force” in the “force clause” of the ACCA means “violent force — that is, force capable of causing physical pain or injury to another person.” Johnson v. United States, — U.S.-, 130 S.Ct. 1265, 1271, 176 L.Ed.2d 1 (2010) (emphasis in original). Thompson’s conduct as described in the plea colloquy plainly fits this definition. Facing arrest for a drug deal, Thompson “str[uek] [an officer] in the chest area” with a cup of liquid, punched another one in the mouth, and attempted to escape. Three police officers then had to “wrestl[e] [him] on the ground to gain control of his hand” while he was flailing his arms and legs. Further, Thompson “continued to reach for his handgun” as well as Officer Guzman’s firearm during the struggle, raising the likelihood that his arrest could have ended in serious injury or death. In fact, his resistance was so vigorous' that the three officers were unable to restrain him until backup units had arrived. As the state court noted at the plea hearing, Thompson had plainly been “fighting with police officers on the street.”
Thompson nevertheless relies on the court’s statement of “I find you guilty of ... assaulting Officer Geolamas” to contend that he was convicted “only” of striking a police officer in the chest area with a cup of liquid. But even if we confine Thompson’s conduct to his interactions with Officer Geolamas, he is still guilty of a violent felony. Not only did Thompson throw a Styrofoam cup of liquid at Geolamas that evening. Thompson was vigorously resisting Officer Geolamas’s attempt to arrest him, during which, according to the plea transcript, he swung his limbs “very radically” and repeatedly sought to secure a firearm. The fact that it took more than three police officers to finally subdue Thompson is testament to the violent nature of the assaultive conduct. In short, Thompson’s behavior on the occasion of his predicate offense involved “the use, attempted use, or threatened use of [force capable of causing physical pain or injury to another person.]” 18 U.S.C. § 924(e)(2)(B)(i); Johnson, 130 S.Ct. at *347 1271. The district court did not err in concluding that the Shepard-approved materials here demonstrate Thompson’s involvement in a violent felony.
C.
To avoid these facts, Thompson argues that he never actually admitted them during his plea colloquy. He relies on our decision in United States v. Alston, 611 F.3d 219, 220-21 (4th Cir.2010), which held that a conviction for second-degree assault under Maryland law cannot serve as an ACCA predicate when it is the result of an Alford plea. Thompson contends that his conviction stems from an Alford plea as well because he did not personally and explicitly assent to the prosecution’s statement of the facts.
Simply put, Thompson’s plea is not an Alford plea. An Alford plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest. See North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Its “distinguishing feature” is “that the defendant does not confirm” the factual basis underlying his plea, Alston, 611 F.3d at 227 (quoting United States v. Savage, 542 F.3d 959, 962 (2d Cir.2008)). The purpose of a statement of facts in this context is not to establish guilt but to ensure merely that “the plea [is] being intelligently entered.” See Alford at 37-38, 91 S.Ct. 160. In short, an Alford plea is an intentional, specific action which serves a distinct function in the law, namely that of ensuring that a defendant’s “protestations of innocence” do not undermine confidence that the constitutional requirement that a plea of guilty be voluntary and intelligent has been satisfied. See id. at 33, 37-39, 91 S.Ct. 160.
In Alston, we clarified the role of this plea arrangement in a modified categorical approach. Relying on Shepard’s instruction that courts should consider a “transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant” to determine whether a guilty plea “necessarily admitted” conduct amounting to a violent felony, we held that conviction resulting from an Alford plea could not serve as an ACCA predicate. Alston, 611 F.3d at 227 (emphasis omitted) (quoting Shepard, 544 U.S. at 26, 125 S.Ct. 1254). Because Alston had pleaded guilty without ever agreeing to the “truth of the proffered facts,” we could not find under Shepard that he had confirmed his involvement in a violent felony. Id. at 221, 227-28.
Thompson’s plea could not be more different. After being informed of his rights, Thompson’s attorney asked her client whether “it is still your intention to plead guilty?” Thompson answered, ‘Tes, ma’am.” Following the prosecution’s statement of facts, the judge then asked Thompson’s counsel if she had “[a]ny additions or corrections” to make to the record. She responded, “No, Your Honor.” Thompson’s attorney then told her client, “I have spoken on your behalf this morning. ... Is there anything else you’d like to say?” Thompson replied, “No, ma’am.”
There is no evidence in the entire transcript that Thompson intended to do anything other than plead guilty that day. The colloquy was replete with opportunities for him to challenge his factual guilt, but nothing of the sort ever occurred. Not once during the hearing did he protest his innocence, attempt to correct the statement of the facts, or even remotely signal that he was interested in an Alford plea. We refuse to dress a perfectly ordinary guilty plea in Alford garb in order to avoid an ACCA enhancement.
*348 The fact that it was Thompson’s lawyer rather than the defendant himself who declined to make any corrections to the factual record does not alter our analysis. To be sure, Shepard discussed a plea colloquy “in which the factual basis for the plea was confirmed by the defendant,” 544 U.S. at 26, 125 S.Ct. 1254 (emphasis added), but we believe that any reasonable interpretation of those words must include the defendant’s lawyer as well. The notion that the term “defendant” nullifies all representations to the court made by his attorney is not a realistic one. As the Supreme Court has observed, “As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent.” New York v. Hill, 528 U.S. 110, 115, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (internal quotation marks omitted).
Thompson’s lawyer was at the plea hearing for a reason, namely to advise, represent, and speak for her client. She spoke in her client’s presence and confirmed, with no recorded murmur of dissent from her client, that she had no additions or corrections to the prosecution’s statement of the facts. Moreover, Thompson himself both confirmed his intention to plead guilty and refused to make any corrections when given another chance to speak.
Taken as a whole, the plea proceedings afford ample support for the finding of the district court that Thompson’s plea of guilty constituted an admission of the violent conduct reflected in the sole proffered factual basis for the plea. To be sure, the modified categorical approach described in Shepard cabins district court discretion to an extent, yet if the primacy of trial courts in the sentencing process envisioned in Gall is to be respected, the district court’s reasonable conclusions from a Shepard-approved document must be upheld.*
*349 IV.
For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

 It follows that we cannot accept the position of our friend in dissent. Before us is simply the question of whether the district court properly concluded from the relevant Shepard documents that Thompson’s prior conviction was a qualifying predicate. In the course of making that finding, we believe the district court was entitled to rely on those facts and circumstances in the plea colloquy it felt relevant. These include Thompson’s own statement that it was his intention to plead guilty, the proffer given by the prosecution, the statement of the defendant's attorney that she had no additions or corrections to that proffer, Thompson's statement confirming that he himself had nothing to add, and of course, the comments of the court. The dissent essentially seeks to magnify this into a collateral constitutional attack on a prior conviction, but it is not that nor is this the forum for that inquiry. As the dissent acknowledges, the modified categorical approach is not "a textually-rooted fundamental constitutional right,” post at 352, but a practical tool for district judges to ascertain reliably what was the nature of the prior offense without imposing undue burdens on the trial court’s sentencing function.
The sole question therefore is whether the district court made a proper finding that Thompson’s second degree assault conviction was for a crime of violence. We think without question that the trial court made that finding and that the plea colloquy amply supports its conclusion. To summarize again, Thompson himself indicated that he wished to plead guilty, the proffer was read in his presence, his attorney confirmed in his presence that she had no additions or corrections to make, and Thompson then stated he had nothing to add. At no time did either Thompson or his attorney dispute anything regarding the factual proffer despite ample opportunity at various junctures in the hearing to do so. No exception was taken at any point by anybody to the fact that the nature of the assault was violent, even to the point of involving Thompson’s intense struggle to seize both his own and Officer Guzman’s weapons. As the dissent rightly notes, the Shepard inquiry is not a "talismanic” one. Post at 352. As evidenced by Shepard's references to a variety of judicial documents as well as to a “ 'comparable judicial record' of the factual basis for the plea,” Nijhawan v. Holder, - U.S.-, 129 S.Ct. 2294, 2299, 174 L.Ed.2d 22 (2009) (quoting Shepard, 544 U.S. at 26, *349 125 S.Ct. 1254), the Court’s purpose was not to invoke a litmus test but to provide a sentencing court with the tools to do what sentencing courts do every day — make a sound and proper sentencing determination. This the district court did.