09-4335-cr
*United States v. Thomas*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: November 17, 2010          Decided: December 16, 2010)

Docket No. 09-4335-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

GARFIELD THOMAS, also known as Milo, also known as Aaron Blake, also known as Inmate Thomas Garfield,

*Defendant-Appellant.*

_____

B e f o r e :

JACOBS, *Chief Judge*, KEARSE AND STRAUB, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) sentencing Defendant-Appellant Garfield Thomas principally to fifty-seven months in prison following his guilty plea to being a felon in possession of a firearm. On appeal, Thomas challenges the strict liability nature of the stolen firearm

enhancement of the Sentencing Guidelines, U.S.S.G. § 2K2.1(b)(4)(A). We reaffirm the continuing validity of our holding in *United States v. Griffiths*, 41 F.3d 844 (2d Cir. 1994), *cert. denied*, 514 U.S. 1056 (1995), that the lack of a scienter requirement in the enhancement is permissible. We also hold that a rational basis exists to support the Guidelines' differential treatment of stolen explosives and stolen firearms such that U.S.S.G. § 2K2.1(b)(4)(A) does not violate equal protection.

AFFIRMED.

_____

PETER M. SKINNER, Assistant United States Attorney (Katherine Polk Failla, *on the brief*), *on behalf of* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

JANEANNE MURRAY, Murray Law LLC, New York, NY, *for Defendant-Appellant*.

_____

STRAUB, *Circuit Judge*:

Defendant-Appellant Garfield Thomas was sentenced principally to fifty-seven months in prison following his guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Thomas challenges the reasonableness of his sentence, arguing that the District Court procedurally erred by including in Thomas's applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") the two-level enhancement of § 2K2.1(b)(4)(A), which applies to certain firearms charges in which the firearm was stolen, regardless of whether the defendant knew that it was stolen. Thomas argues that the lack of a mens rea element renders the enhancement invalid on its face and violative of equal

protection when compared to the Guidelines' two-level enhancement for offenses involving stolen explosives only when the defendant "knew or had reason to believe" that the explosives were stolen. U.S.S.G. § 2K1.3(b)(2). Further, Thomas argues that even if the stolen firearm enhancement was properly applied, the District Court failed to recognize its discretionary power to vary from that provision and did not give due consideration to his policy based arguments.

We reaffirm the continuing validity of our holding in *United States v. Griffiths*, 41 F.3d 844 (2d Cir. 1994), *cert. denied*, 514 U.S. 1056 (1995), that the lack of a scienter requirement in the stolen firearm enhancement is permissible. We also hold that a rational basis exists to support the Guidelines' differential treatment of stolen explosives and stolen firearms such that U.S.S.G. § 2K2.1(b)(4)(A) does not violate equal protection. Finding no indication that the District Court misunderstood its discretionary powers or ignored Thomas's arguments, we affirm the judgment of conviction.

**BACKGROUND**

On November 5, 2008, a bystander was struck during a shooting outside of a nightclub in the Bronx. An eyewitness identified Thomas as the shooter and Thomas was arrested a few days later. Upon his arrest, Thomas possessed a semi-automatic pistol as well as a number of rounds of ammunition. Ballistics evidence later linked that pistol to the shooting. As Thomas had previously been convicted of a felony drug crime – an offense for which he remained on supervised release – he was charged in the United States District Court for the Southern District of New York with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Thomas pled guilty without a plea agreement on June 18, 2009. His presentence report

("PSR") estimated a Guidelines sentencing range of fifty-seven to seventy-one months based on a Criminal History Category of III and an offense level of twenty-three. With respect to the offense level, the PSR identified a base of twenty pursuant to U.S.S.G. § 2K2.1(a), with a four-level enhancement because the firearm was used in connection with another felony (the shooting), § 2K2.1(b)(6), and anticipated a three-level reduction for acceptance of responsibility, § 3E1.1. Additionally, because the firearm had been reported stolen in Virginia, the PSR applied the two-level stolen firearm enhancement of § 2K2.1(b)(4)(A).

Thomas objected, both in writing and during his sentencing proceeding, to application of the stolen firearm enhancement. Through counsel, Thomas maintained that he did not know that the gun in his possession was stolen; rather, he explained that he obtained the firearm from an individual with whom he was sharing an apartment and had "no idea where the gun came from other than [that] he got it from this individual." Given his ignorance of the gun's status, Thomas urged the court to reject the strict liability nature of the enhancement. Conceding "Second Circuit precedent against" him, Thomas contended that the precedent has been impaired by *United States v. Booker*, 543 U.S. 220 (2005), and related cases, and should be revisited.

In response, the District Court noted that it did not "follow the logic" of Thomas's argument for, "in a post-*Booker* world, in which . . . the guidelines are advisory only and the Court's discretion is greater, it would seem . . . to follow that the pre-*Booker* law would be even stronger today, not weaker." Since the enhancement "is a sentencing factor, . . . not an element of the offense," the court concluded that its authority to apply the enhancement "in a post-*Booker* world remains just as viable." Accordingly, the court declined Thomas's invitation to invalidate

or otherwise depart from U.S.S.G. § 2K2.1(b)(4)(A).  Stating that it "intend[ed] to follow the Second Circuit on this," the court adopted the PSR's Guidelines calculation, and ultimately sentenced Thomas principally to fifty-seven months in prison, to run concurrently with an eighteen-month sentence for the related supervised release violations.  Thomas now appeals.

**DISCUSSION**

Though following *Booker* the Guidelines are only advisory, they nevertheless retain an important role in a district court's sentencing decision.  Indeed, "[a] district court should normally begin all sentencing proceedings by calculating, with the assistance of the Presentence Report, the applicable Guidelines range." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc), *cert. denied*, 129 S. Ct. 2735 (2009).  After doing so and considering all other relevant factors, the court should proceed to determine an appropriate sentence, which may or may not be within the Guidelines-recommended range. *See United States v. Bonilla*, 618 F.3d 102, 110 (2d Cir. 2010).

We review both the procedural and substantive components of a sentence for reasonableness, employing a "deferential abuse-of-discretion standard." *Cavera*, 550 F.3d at 189.  "A district court commits procedural error where," among other things, "it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory," or "fails adequately to explain its chosen sentence." *Id*. at 190 (internal citation omitted).  In reviewing the propriety of a Guidelines calculation, we review de novo questions of law such as Thomas's constitutional challenges to U.S.S.G. § 2K2.1(b)(4)(A). *Cf. United States v. Hasan*, 586 F.3d 161, 168 (2d Cir.

2009) ("When a defendant challenges the district court's *interpretation* of a Guidelines provision, we review this interpretation of the Guidelines – just as we would review the interpretation of any law – *de novo*."), *cert. denied*, 131 S. Ct. 317 (2010).

## I.      Stolen Firearm Sentencing Guideline

Section 2K2.1(b)(4)(A) of the Guidelines increases the offense level by two for the commission of certain firearms offenses in which "any firearm . . . was stolen." We have interpreted materially similar language in an earlier version of this Guideline to unambiguously apply regardless of the defendant's state of mind in respect of the firearm's provenance.[1] *United States v. Litchfield*, 986 F.2d 21, 23 (2d Cir. 1993) (holding the rule of lenity inapplicable). Commentary to the present version confirms that the enhancement is intended to "appl[y] regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S.S.G. § 2K2.1 cmt. n.8(B). It is this strict liability aspect that Thomas contends renders § 2K2.1(b)(4)(A) invalid.

Thomas readily acknowledges, as he must, that *Griffiths* upheld the validity of the stolen firearm enhancement against this same attack. *Griffiths* first observed that "[t]he government reasonably may determine that stolen firearms often end up in the hands of criminals" and that the government has a "legitimate interest in punishing possession of a stolen firearm and placing the burden upon one who receives a firearm to ensure that the possession is lawful." 41 F.3d at

---

[1]  The 1989 version of the stolen-firearm Guideline, which *Litchfield* considered, analogously directed an "increase [of] 2 levels" "[i]f the firearm was stolen." U.S.S.G. § 2K2.1(b)(2) (1989).

845-46. *Griffiths* then concluded that the stolen firearm enhancement "does not violate the due process clause" because "the enhancement does not alter the statutory maximum penalty, negate the presumption of innocence or alter the burden of proof for the underlying offense, or create a separate offense calling for a separate penalty." *Id*. *Griffiths* additionally rejected the argument that the presence of a scienter requirement in the statute criminalizing the possession or transportation of a stolen firearm in interstate commerce, 18 U.S.C. § 922(i)-(j) (requiring that the defendant "know[] or hav[e] reasonable cause to believe that the firearm . . . was stolen"), constrains the stolen firearm Guideline to have the same mens rea component, citing the "distinction . . . between strict liability crimes and strict liability enhancements." *Id*. at 845; *see also United States v. Williams*, 49 F.3d 92, 93 (2d Cir. 1995) (relying on *Griffiths* to reject analogous challenge to the Guidelines enhancement for possession of a firearm with an obliterated serial number and explaining that "[a]lthough 18 U.S.C. § 922(k), which criminalizes the possession of a firearm with an obliterated serial number, contains a scienter requirement, Congress has not required in this statute that the [obliterated serial number] sentencing enhancement contain a scienter requirement" (internal citation omitted)).

Primarily relying on *United States v. Handy*, 570 F. Supp. 2d 437 (E.D.N.Y. 2008) (Weinstein, J.), Thomas argues that the "sea change" in sentencing law promulgated by the Supreme Court beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and extending through *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Kimbrough v. United States*, 552 U.S. 85 (2007), sufficiently undermines *Griffiths* such that it is no longer controlling. While the past decade has indeed seen significant changes in

the sentencing realm, none of these negates the continuing applicability of *Griffiths*.

*Apprendi* and *Blakely* are not implicated because, as *Griffiths* noted, the stolen firearm "enhancement does not alter the statutory maximum penalty," 41 F.3d at 845, and Thomas received a sentence well within the statutory maximum for the possession offense to which he pled guilty, *see* 18 U.S.C. § 924(a)(2) (establishing ten-year maximum sentence for violations of 18 U.S.C. § 922(g)). Nor do *Booker* and *Kimbrough* assist Thomas, for those cases concern the advisory nature of the Guidelines and do not speak to the validity of any particular guideline. (Even *Kimbrough* in lambasting the crack cocaine Guidelines did not invalidate them. *See* *Kimbrough*, 552 U.S. at 91.) In sum, despite significant changes in sentencing law generally, none of these undermine the specific conclusions of *Griffiths*, which remains controlling precedent. In fact, we have already confirmed the post-*Booker* propriety of the related strict liability Guideline enhancement concerning firearms with altered or obliterated serial numbers.[2] *United States v. Brown*, 514 F.3d 256, 269 (2d Cir. 2008) (noting, in respect of § 2K2.1(b)(4)(B), that "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*"); *see also United States v. Ortiz*, 621 F.3d 82, 85 (2d Cir. 2010) (upholding same provision), *petition for cert. filed*, No. 10-7719 (U.S. Nov. 24, 2010).

Seeking another route around *Griffiths*, Thomas cites "emerging data" suggesting that a number of firearms are erroneously reported as stolen and argues that, as a result, we should

---

[2] An obliterated serial number would be visibly apparent and thus presumably noticed; an altered serial number, on the other hand, might not be apparent, and would therefore present the same issue of knowledge that is at issue in this case.

revisit *Griffiths'* assumption that it is proper to place the onus of ascertaining a firearm's provenance on the possessor. We are not persuaded. First, such data is not a basis for overturning extant precedent. It is well established that a panel of this Court is bound by the decision of a prior panel unless the decision has been overturned either by the Supreme Court or this Court en banc. *E.g., Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 1896 (2010). More fundamentally, the data Thomas cites do not actually undermine *Griffiths'* logic. *Griffiths* rested, in part, on the notion that the government may seek to curb the use of stolen firearms by imposing enhanced penalties for their possession, given that stolen firearms are apt to wind up in the hands of criminals. Far from negating that proposition, Thomas's data actually reinforce it. As Thomas explains, "firearm retailers often sell guns to ineligible persons (e.g., convicted felons, non-state residents) and report those guns lost or stolen in order to avoid liability if the gun is traced back to their establishment by federal and state authorities." (Thomas Br. at 15 (quoting *Handy*, 570 F. Supp. 2d at 478).) Likewise, Thomas posits that "straw purchasers" may falsely report firearms as stolen to facilitate weapons trafficking. (Thomas Br. at 18.) In both scenarios, a putatively "stolen" firearm is more likely to end up in the hand of a criminal and to be used for illicit purposes. Thus, *Griffiths'* concern with stolen firearms is as compelling regardless of whether the firearm is actually stolen or merely reported – and thus classified – as such. It follows that it remains reasonable to place the burden of ascertaining a firearm's history on the possessor via the strict liability sentencing enhancement of U.S.S.G. § 2K2.1(b)(4). Additionally, the strict liability nature of the Guideline may produce a positive deterrent effect and assist in achieving

the laudable and legitimate governmental interest in reducing the illegal possession of firearms. As the government points out, "as criminals such a[s] Thomas learn that there is additional punishment for possessing a stolen gun, regardless of whether they knew the gun was stolen, they will be further deterred from possessing *any* gun." (Gov't Br. at 26.) For these reasons, the rule established by *Griffiths* remains as sensible now as it was then and we see no basis for departing from its holding even if we as a panel were empowered to do so.

**II.     Equal Protection**

In addition to challenging the Guideline on its face, Thomas argues that § 2K2.1(b)(4)(A) contravenes equal protection, in violation of the Fifth Amendment, in light of a separate Guideline which imposes a two-level sentencing enhancement for certain offenses involving stolen explosives only if "the defendant knew or had reason to believe" that the explosives were stolen. U.S.S.G. § 2K1.3(b)(2). We have not previously considered the equal protection implications of the stolen firearm enhancement vis-à-vis the stolen explosive enhancement. Because the distinction drawn by the Guidelines "does not involve a suspect classification or impinge on a fundamental right, it need survive only rational basis scrutiny." *Griffin v. Mann*, 156 F.3d 288, 291 (2d Cir. 1998); *cf. United States v. Samas*, 561 F.3d 108, 110 (2d Cir. 2009) (applying rational basis review to sentencing challenge based on crack/cocaine disparity), *cert. denied*, 130 S. Ct. 184 (2009); *United States v. Proyect*, 989 F.2d 84, 88 (2d Cir. 1993) ("To sustain a federal sentencing statute against a[n] . . . equal protection challenge, courts need only find that Congress had a rational basis for its choice of penalties." (internal quotation marks omitted)), *cert. denied*, 510 U.S. 822 (1993). Under rational basis review, the sentencing

differential between offenses involving stolen firearms and those involving stolen explosives "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). This standard confers on the challenged classification "a strong presumption of validity," and places the burden on the person attacking its rationality "to negative every conceivable basis which might support it." *Id*. at 314-15 (internal citation and quotation marks omitted). Thomas's inability to do so here is fatal to his equal protection challenge.

Thomas contends that felons in possession of firearms, such as himself, and those in possession of explosives are similarly situated and that the relatively harsher treatment of the former is "irrational," since "explosives are far more dangerous than firearms." (Thomas Br. at 25.) While that premise may be true, it does not end the matter. As the Ninth Circuit has cogently explained in rejecting this same argument, "[i]t is reasonably conceivable that although explosives are in theory more deadly than firearms when compared on an individualized basis, stolen firearms are more readily obtainable by felons and therefore more deadly than stolen explosives in the aggregate." *United States v. Ellsworth*, 456 F.3d 1146, 1150 (9th Cir. 2006), *cert. denied*, 549 U.S. 1089 (2006). Indeed, although the rational basis sufficient to support the Guidelines' classification need not be one that actually motivated the Sentencing Commission, *see Beach Commc'ns*, 508 U.S. at 315, there are some indications that the Commission may have in fact been influenced, at least in part, by the aggregate harms flowing from stolen firearms. In particular, commentary to the original version of the stolen firearm Guideline highlights

-11-

"[i]ndependent studies show[ing] that stolen firearms are used disproportionally in the commission of crimes." U.S.S.G. § 2K2.1 (1987) cmt. background, *available at* 52 Fed. Reg. 44,674, 44,707 (Nov. 20, 1987). The Guidelines reflected no comparable concern with respect to stolen explosives. *See id.* § 2K1.3 and attendant commentary, *available at* 52 Fed. Reg. at 44,706.

Because there exists a "reasonably conceivable state of facts" to support the distinction between stolen firearms and stolen explosives, Thomas's equal protection challenge fails. As a result, the District Court properly included the two-level stolen firearm enhancement in calculating Thomas's Guidelines range.

**III.    Additional Procedural Challenges**

Finally, Thomas argues that even if his Guidelines range was properly computed, the District Court erred by failing to recognize its power to reject the stolen firearm enhancement on policy grounds and impose a non-Guidelines sentence. While such failure would amount to significant procedural error, *e.g., United States v. Regalado*, 518 F.3d 143, 147 (2d Cir. 2008), there is no indication that the District Court misunderstood its discretionary powers in this case. Thomas confuses the court's statement that it "intend[ed] to follow the Second Circuit" by applying the two-level enhancement to calculate Thomas's Guidelines range with the separate issue of whether the court recognized its power to deviate from the Guidelines once properly ascertained. And as to the latter, the court explicitly noted in addressing Thomas's challenges to the stolen firearm enhancement that "in a post-*Booker* world, in which . . . the guidelines are advisory only . . . the Court's discretion is greater" than in the "pre-*Booker* world," in which "the

Court [was] required to include the enhancement." Thus, even if the District Court's reference to following our precedent, "standing alone, might be interpreted as a misapprehension that a Guidelines sentence should presumptively be imposed, that phrase could not overcome the clear indication in the record that the [District] Court was well aware of its authority to impose a non-Guidelines sentence." *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006), *cert. denied*, 549 U.S. 882 (2006).

Nor is there any error in the fact that the District Court did not expressly parse the details of Thomas's policy based attacks on the Guideline. "We have time and time again made it clear that we do not insist that the district court address every argument the defendant has made." *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010) (internal quotation marks omitted). More specifically, we have rejected the notion that a district court must respond specifically to even a non-frivolous argument concerning a policy disagreement with a Guidelines enhancement. *See id.* (in respect of U.S.S.G. § 2L1.2(b)(1)'s prior act of violence enhancement). Rather, the "District Court must satisfy us only that it has considered the party's arguments and has articulated a reasonable basis for exercising its decision-making authority." *Id.* It has adequately done so here.

In direct response to counsel's attack on the enhancement for not "represent[ing] the typical experiential careful analysis of the Sentencing Commission . . . and also kind of fl[ying] in the face of some . . . facts that would suggest that a stolen gun enhancement [i]s very unfair," the District Court indicated that it did not find the issues Thomas raised to be problematic. Moreover, Thomas's policy arguments explicitly referenced and paralleled those extensively laid

out in *United States v. Handy*, 570 F. Supp. 2d 473, 479-80 (E.D.N.Y. 2008), a case with which the court noted respectful disagreement. In the end, the District Court decided to impose a sentence at the bottom of the Guidelines range and provided a thorough accounting of its reasons for so doing. In particular, the District Court highlighted the fact that Thomas received considerable leniency in sentencing for his earlier drug conviction on account of a serious medical condition but, instead of tending to his health as the sentence was designed to facilitate, Thomas "demonstrated a disregard for the health of others" by "carrying and shooting a gun into a crowd of innocent people."

In short, we find no error in any aspect of Thomas's sentencing. The District Court properly calculated Thomas's Guidelines range and then, with an understanding of the advisory nature of that range and with due consideration to the arguments presented, proceeded to impose an entirely reasonable sentence.

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court is AFFIRMED.