# United States Court of Appeals
## For the First Circuit

No. 05-2245

UNITED STATES OF AMERICA,

Appellant,

v.

MICHAEL MALOUF,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Dyk,* Circuit Judges.

William D. Weinreb, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief, for
appellant.
Frank J. McGee, on brief, for appellee.
Judith H. Mizner, Assistant Federal Public Defender, Federal
Defender Office, with whom Miriam Conrad, Federal Public Defender,
Districts of Massachusetts, New Hampshire and Rhode Island, was on
brief, as amicus curiae in support of appellee.

October 13, 2006

---

*  Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  On September 10, 2003, appellee Michael Malouf ("Malouf") was charged in Count One of a two-count indictment with conspiracy to distribute, and to possess with intent to distribute, five kilograms or more of cocaine and an unspecified amount of marijuana, in violation of 21 U.S.C. §§ 841 (a)(1) and 846.  Section 841(b)(1)(B) imposes upon a defendant with a prior felony conviction a mandatory minimum sentence of ten years for offenses involving 500 grams or more of a substance containing cocaine.  On May 28, 2004, Malouf pled guilty to the indictment, but he reserved the right to contest the amount of drugs specifically attributable to him.  At sentencing, the court found that the government had proved by a fair preponderance of the evidence that Malouf was responsible for more than 500 grams of cocaine.  However, the court found that the government had not proved its case beyond a reasonable doubt.  Because the district court found that a fact that triggers a mandatory minimum sentence must be proved beyond a reasonable doubt, the judge sentenced Malouf to 60 months' imprisonment.  After careful consideration, we reverse.

## I.

In 2001, the Federal Bureau of Investigation ("FBI") undertook an investigation of drug trafficking in the South Shore area of Massachusetts.  Stephen Nicholson ("Nicholson") was one of the initial targets of the investigation and he would ultimately be

one of Malouf's co-defendants.  Between April 14 and June 13 2002, the government intercepted Nicholson's telephone calls.  The wiretap surveillance revealed that Nicholson was selling ounce quantities of cocaine to various buyers and that Malouf was his primary customer.  The government also conducted physical surveillance of Nicholson and Malouf, among others.

At the change of plea hearing on May 28, 2004, Malouf pled guilty to the charge of conspiracy to distribute, and to possess with intent to distribute, five kilograms or more of cocaine and a quantity of marijuana in violation of §§ 841(a)(1) and 846.  The government described the minimum applicable penalty as follows:  "because the defendant has a prior felony drug conviction and an 851 information[1] has been filed, if he's found accountable for 500 grams or more of cocaine he'd be subject to a ten-year minimum mandatory sentence and a minimum mandatory eight-year term of supervised release."  Malouf admitted that he had

---

[1]  21 U.S.C. § 851 provides that, where the government seeks to establish prior convictions for the purpose of increasing the applicable criminal penalties for a drug offense under § 841, the proper procedure is as follows:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1).

conspired with Nicholson and others to distribute cocaine and marijuana, and he agreed that the conspiracy-wide total drug weight exceeded 500 grams. However, he notified the court of his intention to contest the quantity of drugs specifically attributable to him at sentencing.

At the sentencing hearing on December 20, 2004, Malouf's counsel again indicated that he intended to contest certain of the alleged cocaine transactions. The court then directed both parties to submit memoranda identifying the contested transactions and establishing their competing interpretations of the relevant intercepted telephone calls.

On January 27, 2005, the government submitted a Corrected Sentencing Memorandum and chart alleging that Malouf participated in eighteen separate cocaine transactions involving approximately 20.5 ounces (581 grams) of cocaine during, or immediately prior to, the wiretap period. Malouf contested four of the eighteen transactions. At the sentencing hearing on March 15, 2005, Malouf first contested an alleged two-ounce (56.7-gram) transaction that occurred two days prior to the April 14, 2002, commencement of the wiretap period. Malouf challenged this transaction solely on the ground that it fell outside of the wiretap period. Because the court found that Malouf was not challenging the drug quantity or the government's interpretation of the telephone calls referring to the transaction, the court dismissed Malouf's objection.

-4-

Next, Malouf contested an alleged one-ounce (28.35-gram) transaction on April 25 and another on April 27 on the ground that there was insufficient evidence that they actually transpired. The court agreed that the evidence was insufficient to prove either transaction, resulting in a 56.7-gram reduction of the total drug quantity attributable to him.

Finally, Malouf challenged the alleged June 11 one-ounce (28.35-gram) transaction. Although Malouf did not contest the government's interpretation of a telephone conversation on that date in which he and Nicholson discussed a cocaine transaction that was to take place later that day, he argued that "there's no evidence that the meeting ever happened." The government urged the court to infer that the meeting took place because there were "no other phone calls afterward indicating that it did not take place." Because it was clear that the applicability of the ten-year mandatory minimum would turn on the court's determination as to the June 11 transaction, the court continued the sentencing hearing and invited both parties to provide additional evidence.

When the sentencing hearing resumed on March 23, 2005, neither party presented new evidence as to the June 11 transaction. The critical issue was whether the appropriate legal standard by which to judge a fact triggering a mandatory minimum sentence was beyond a reasonable doubt or by a fair preponderance of the evidence. The court determined that "facts which determine a

mandatory minimum ought to go before a jury," or, if both parties agree to waive a jury trial, the sentencing judge "stands in the shoes of the jury, and the standard is beyond a reasonable doubt." The government objected on the ground that "there's no right under the Sixth Amendment, the due process clause or any other source of law to a jury trial or beyond a reasonable doubt standard with respect to any sentencing fact, the determination of which would result in a sentence below the statutory maximum." When the court dismissed the government's objection, the government agreed to waive any jury trial right.

The court determined that although it would find that the June 11 transaction had occurred as alleged if the applicable standard was a fair preponderance of the evidence, it "could not conclude beyond a reasonable doubt" that the transaction had in fact taken place. As a result, the court declined to hold Malouf accountable for the one ounce (28.35 grams) he allegedly purchased in the June 11 transaction. The court thus concluded that Malouf was accountable for a total of only 17.5 ounces (496.125 grams). Because the total was less than 500 grams of cocaine, the ten-year mandatory minimum sentence did not apply. Malouf's base offense level was 26, and the court reduced it to 23 for acceptance of responsibility. Malouf's criminal history category was IV, but the court brought it down to III because "at least two points of the criminal history derived from [his] addiction problems." The

guidelines sentencing range was 57 to 71 months, and the court sentenced Malouf to 60 months' imprisonment and a six-year term of supervised release.

On June 14, 2005, the district court issued a written opinion addressing four separate issues pertaining to the sentencing of Malouf. United States v. Malouf, 377 F. Supp. 2d 315 (D. Mass. 2005). Explaining the logic underlying Malouf's sentence, the district court asked,

> (1) Do the drug quantities outlined in 21 U.S.C. § 841 comprise elements of offenses, or sentencing factors? If the former, the relevant case is Apprendi, a jury trial is required and the standard of proof is beyond a reasonable doubt; if the latter, it is Harris, drug quantity can be determined by a judge, and the standard is a fair preponderance of the evidence. (2) What is the continued efficacy of Harris in the light of the Court's rulings in Blakely and Booker? (3) What is a district court to do when the First Circuit's interpretation of § 841 relies on Supreme Court precedent which predates Blakely and Booker? (4) In the alternative, however the facts are characterized (as sentencing factors or elements), where facts have a significant, indeed determinative impact, does the Due Process Clause of the Fifth Amendment require the application of the beyond a reasonable doubt standard?

Id. at 317.

As to the first issue, the court found that "§ 841 is an offense-defining statutory provision, all elements of which must be tried before the jury." Id. at 328. As to the second question, the district court determined that "the breadth of the holdings in

-7-

Booker and Blakely have in fact overruled Harris." Id. at 326. With regard to the third issue, although the court acknowledged that our decision in United States v. Goodine, 326 F.3d 26 (1st Cir. 2003) required a different result, it determined that Goodine was not binding because of its "reliance on Supreme Court precedent which is crumbling." Id. at 325. Finally, as to the due process issue, the court found that quantity must be proved beyond a reasonable doubt "[i]f a substantial sentence hinges on a finding of a specific quantity" because in such cases courts "should have a high degree of confidence in this finding." Id. at 329.

## II.

The government argues on appeal that the district court erred by refusing to impose on Malouf a ten-year mandatory minimum sentence under 21 U.S.C. § 841(B)(1)(b) despite finding by a preponderance of the evidence that he was accountable for more than 500 grams of cocaine. The government challenges only the district court's legal determinations, which we review de novo. Goodine, 326 F.3d at 27.

### A. Harris

The government first contests the district court's conclusion that the Supreme Court's decisions in United States v. Booker and Blakely v. Washington overruled its earlier opinions in Harris v. United States and McMillan v. Pennsylvania.

-8-

## 1. Relevant Precedent

We begin with a brief discussion of relevant Supreme Court precedent. In <u>McMillan</u> v. <u>Pennsylvania</u>, the Court sustained a statute that allowed the sentencing judge to find, by a preponderance of the evidence, a fact that increased the minimum penalty for a crime. 477 U.S. 79, 79 (1986). In <u>McMillan</u>, the Court distinguished between offense elements, which must be proved beyond a reasonable doubt, and sentencing factors, which may be proved by a preponderance of the evidence. <u>Id.</u> at 91. In <u>Apprendi</u> v. <u>New Jersey</u>, the Court held that "any fact that increases the penalty for a crime beyond the prescribed <u>statutory maximum</u> must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000) (emphasis added). Two years later in <u>Harris</u>, the Court held that <u>Apprendi</u> did not apply to facts that increase the mandatory <u>minimum</u> sentence and reaffirmed <u>McMillan</u>. 536 U.S. 545, 545 (2002) (emphasis added). In <u>Blakely</u> v. <u>Washington</u>, the Court found unconstitutional a state trial court's imposition of a sentence that was above the statutory maximum, on the basis of the judge's finding of fact. 542 U.S. 296, 305 (2004). The <u>Blakely</u> court held that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>." <u>Id.</u> at 303. Finally, in <u>United States</u> v. <u>Booker</u>, the Court held

that the reasoning of <u>Blakely</u> should be applied to the Federal Sentencing Guidelines.  543 U.S. 220, 226-27 (2005).

## 2. The district court's analysis

The district court in the case before us reasoned that <u>Blakely</u> and <u>Booker</u> actually "broadened <u>Apprendi</u> by requiring that all facts 'which the law makes essential to the punishment' be subject to Sixth Amendment protections." <u>Malouf</u>, 377 F. Supp. 2d at 324.   The judge determined further that <u>Blakely</u> and <u>Booker</u> evince the Court's movement toward an "impact test" that focuses more on "the impact of such facts upon punishment, rather than on the formalistic distinctions between sentencing factors and offense elements." <u>Id.</u>   According to the district court, this "impact test" approach "necessarily casts doubt on <u>Harris</u>' distinction between mandatory minimum provisions and statutory maximums." <u>Id.</u> Ultimately, the court concluded, "[i]n my judgment, the breadth of the holdings in <u>Booker</u> and <u>Blakely</u> <u>have</u> in fact overruled <u>Harris</u>. The Court has gone from holding that the Sixth Amendment is implicated in the determination of facts that increase a statutory maximum (<u>Apprendi</u>) to applying the Sixth Amendment to all facts 'essential to the punishment' (<u>Booker</u> and <u>Blakely</u>)." <u>Id.</u> at 326 (footnote omitted).

We need not delve deeper into the district court's analysis because, since its opinion issued on June 14, 2005, we have had cause to consider the continued vitality of <u>Harris</u> in

light of subsequent Supreme Court case law.  Approximately ten months after the district court decided Malouf, we decided the case of United States v. Lizardo, in which we held that "Booker left intact the Supreme Court's precedent in Harris, which allowed the use of judicially found facts to increase a mandatory minimum sentence."  445 F.3d 73, 90 (1st Cir. 2006).

### B.  **Goodine**

The district court concluded that even if Harris remains good law, § 841 "is an offense-defining statutory provision, all elements of which must be tried before the jury."  Malouf, 377 F. Supp. 2d at 328.  This finding is directly contrary to -- and foreclosed by -- Goodine in which we held that "drug quantity for purposes of § 841 is a sentencing factor that may be determined by a preponderance of the evidence."  326 F.3d at 32.  Goodine was decided after Apprendi and Harris but before Booker and Blakely. The district court found that it was not bound by Goodine because that opinion was based on Supreme Court precedent "which is crumbling."  Malouf, 377 F. Supp. 2d at 325.  As we have since held in Lizardo, we are bound by Goodine.  Lizardo, 445 F.3d at 90.

We tarry here to reaffirm that there are only two exceptions to the principle that newly constituted panels are bound by decisions of prior panels in the same circuit. As to the first, "[a]n existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the

-11-

Supreme Court, an en banc opinion of the circuit court, or a statutory overruling." United States v. Guzmán, 419 F.3d 27, 31 (1st Cir. 2005) (citation and internal quotation marks omitted). With regard to the second exception which "operates in instances that fairly may be described as hen's-teeth rare, authority that postdates the original decision, although not directly controlling, may nevertheless offer a compelling reason for believing that the former panel, in light of new developments, would change its collective mind." Id. Neither exception applies in this case. As we discussed in the previous section, Harris remains good law after Blakely and Booker, and there is no other reason for us to contravene our own precedent. Goodine is binding on this circuit and the district court erred when it concluded otherwise.

### C. Due Process

The district court made an alternative finding that even if drug quantity is a sentencing factor under § 841, it must be proven beyond a reasonable doubt because of the protections afforded by the due process provision of the Fifth Amendment. Citing a "new concern for procedural fairness in the finding of facts," the district court held that "[i]f a substantial sentence hinges on a finding of a specific quantity, then . . . I (and the public) should have a high degree of confidence in this finding," and thus the quantity finding must be proved beyond a reasonable doubt. Malouf, 377 F. Supp. 2d at 329.

-12-

The district court's analysis and conclusion are foreclosed by the Supreme Court's decision in <u>McMillan</u>. In that case, the Court considered the constitutionality of a Pennsylvania statute that required a sentencing court to impose a five-year minimum sentence if it found by a preponderance of the evidence that the defendant "visibly possessed a firearm" during the commission of certain enumerated offenses. 477 U.S. at 81. <u>McMillan</u> held that due process did not require visible possession of a firearm to be treated as an element of the offense that must be proved beyond a reasonable doubt. The Court noted that "sentencing courts have always operated without constitutionally imposed burdens of proof" and that the visible possession requirement, despite triggering a mandatory minimum penalty, did not implicate the Due Process Clause because it "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty." <u>Id.</u> at 92 n.8, 87-88. The same is true here with respect to drug quantity, insofar as it determines the mandatory minimum sentence.

## III.

For the foregoing reasons, we reverse the district court's decision and remand for sentencing in accordance with this opinion.

**<u>Reversed and remanded</u>**.