# United States Court of Appeals
## For the First Circuit

No. 15-1619

United States of America,

Appellee,

v.

Samuel Lasalle González,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson, and Dyk,* Circuit Judges.

Alejandra Bird López for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

May 15, 2017

* Of the Federal Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.  Samuel Lasalle González ("Lasalle") pled guilty to being a felon in possession of a firearm with an agreed sentencing range of thirty to thirty-seven months. But after the district court tallied all the points for what Lasalle did with that firearm--burgling a house then shooting a police officer as he tried to flee the scene--the court landed on a sentence of ten years, the statutory maximum.  Lasalle calls foul, claiming the offense-level increases are invalid, his sentence is unreasonable, and his lawyer should have told him to back out of the deal.  Finding only smoke but no fire to his claims, we affirm.

## BACKGROUND

On October 15, 2014, a grand jury charged Lasalle, a convicted felon, with knowingly and illegally possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and he pled guilty to the charge shortly thereafter.  So, we draw these facts from his plea agreement, the undisputed sections of the presentence investigation report ("PSR"), and the transcripts of his change-of-plea and sentencing hearings.  United States v. Rivera-González, 776 F.3d 45, 47 (1st Cir. 2015).  Here's what happened.

According to the plea agreement's Stipulation of Facts --these are facts that Lasalle agrees the government could prove beyond a reasonable doubt at trial--on October 8, 2014, two police officers responded to a call that a "suspicious unknown male" (who

- 2 -

turned out to be Lasalle) was walking through the caller's backyard. When Lasalle saw the officers, he ran and the officers gave chase in different directions. One of the officers yelled, "Police, do not move." The second officer heard four or five gunshots, then found his patrol partner lying on the ground wounded. When he saw Lasalle approaching from the woods, the second officer commanded Lasalle to stop; when Lasalle ignored the command and continued to approach, the second officer shot Lasalle in the leg. Both the wounded officer and Lasalle were hospitalized.

The PSR tells a more colorful tale. "Based on the Reports of Investigation and all other available information," some of the gunshots the second officer heard came from Lasalle's illegally-possessed firearm: he stopped when the first officer told him to, but rather than surrender his gun, Lasalle shot the officer in the jaw and again in the torso. Hours later, in an interview with a police officer at the hospital, Lasalle said that he found the gun (a revolver that police later discovered was stolen back in January 2014) on the side of the road; admitted that he broke into a house that night and stole some jewelry and frozen chicken because he was hungry and had no money; and admitted that he exchanged fire with the officers. (We note here that at the change-of-plea hearing, the government confirmed that the wounded officer would testify that it was Lasalle who shot him.)

Although the only charge before the federal grand jury was illegally possessing the gun, Lasalle was charged in a Puerto Rico state court with attempted murder and aggravated burglary, among other crimes stemming from the events of that night. Lasalle's lawyer reports that sometime after the change of plea hearing but before his federal-court sentencing, Lasalle pled guilty to aggravated assault in the state court. The specifics of the resolution of the Puerto Rico charges are unknown, but Lasalle received a ten-year sentence.

Now, in the plea agreement, the parties calculated that Lasalle's total offense level was seventeen, and recommended the court sentence Lasalle to thirty months in prison--a figure at the bottom of the proposed Guidelines sentencing range of thirty to thirty-seven months. The PSR calculated a significantly higher sentencing range after bumping up his offense level by twelve: (1) two more levels because the firearm was stolen, (2) four more levels because Lasalle possessed the gun in connection with another felony, and (3) six more levels because Lasalle injured a law enforcement officer in connection with the offense. All told, Lasalle's range was 108 to 135 months, though the PSR reduced the upper boundary of that range to 120 months because that is the statutory maximum sentence for the offense. See 18 U.S.C. § 924(a)(2); U.S. Sentencing Guidelines Manual § 5G1.1(c)(1) (U.S. Sentencing Comm'n 2014) [hereinafter "U.S.S.G."].

Lasalle objected to the PSR's Guidelines calculations on essentially the same grounds he raises before us today (with a couple of notable exceptions that we will get to below), claiming the offense-level increases are invalid and their application violated his Sixth Amendment and due process rights. The judge reached the opposite conclusion. He then sentenced Lasalle to ten years' imprisonment, to be served concurrently with his ten-year state court sentence. This appeal followed.

**ANALYSIS**

Lasalle seeks safe harbor for an armada of arguments. He claims: (1) the offense-level increase for using a stolen firearm is invalid because it does not include an element of mens rea, (2) all of the offense-level increases are invalid and violate his Sixth Amendment and due process rights because they are based on uncharged conduct not found by a jury or proven beyond a reasonable doubt, (3) the sentence is procedurally and substantively unreasonable, and (4) his attorney was ineffective for failing to advise him to back out of his plea agreement when it became clear that his sentence would far exceed the recommended range.[1] Finding

---

[1] One more thing: Lasalle argues that by defending the district court's sentence here on appeal, the government is in breach of the plea agreement. But the plea agreement does not bar the government from defending an appeal, "[s]o this argument is a nonstarter." United States v. Figueroa-Rivera, 665 F. App'x 1, 3 n.3 (1st Cir. 2016).

we cannot give Lasalle safe harbor, we torpedo each of his arguments in turn.

## Mens Rea

On to Lasalle's first claim. He argues that the Sentencing Guidelines' § 2K2.1(b)(4) two-level increase for using a stolen firearm (what Lasalle calls the stolen-firearm enhancement) is invalid because it does not include an element of mens rea, meaning the court applied the offense-level increase even though the government never had to prove Lasalle knew his gun was stolen. (He claimed he found it on the side of the road.) Lasalle says this flaw invalidates the enhancement for three reasons: (1) it violates his due process rights, (2) it is contrary to the congressional intent expressed in the Gun Control Act of 1968, and (3) it is contrary to the purposes of the Sentencing Reform Act of 1984. These are legal arguments that we address de novo. See United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). We break down and knock down each argument in turn.

### 1) Due Process

We turn first to his lead argument--that without an element of mens rea, the application of the offense-level increase violated his Fifth Amendment due process rights. Lasalle couches this argument in more abstract language: "[T]hat an injury can amount to a crime only when inflicted by intention," he points

out, "is [a principle] as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Morissette v. United States, 342 U.S. 246, 250 (1952). But in the end it boils down to this: Due process protects the right to fair notice, meaning notice to an individual that his conduct does not conform to the law. See Staples v. United States, 511 U.S. 600, 615-16 (1994); United States v. Ford, 821 F.3d 63, 70 (1st Cir. 2016). Generally, criminal statutes provide that notice by including an element of mens rea, and so a mens-rea-less statute can violate a defendant's due process rights. Staples, 511 U.S. at 605-06; Ford, 821 F.3d at 70. Lasalle says the same mens-rea reasoning applies to his Guidelines enhancement, so the mens-rea-less enhancement violates his due process rights, too.

The government does not address Lasalle's due process notice argument on his terms. Instead, it reasons that the offense-level increase is valid by process of elimination: the increase does not violate Lasalle's constitutional rights because it does not alter the minimum or maximum penalty for Lasalle's crime, create a separate offense with a separate penalty, alter the burden of proof, or negate Lasalle's presumption of innocence. See Alleyne v. United States, 133 S. Ct. 2151, 2158 (2013); McMillan v. Pennsylvania, 477 U.S. 79, 87 (1986). So, the offense-

level increase neither creates a separate crime, nor functions as an element of a crime. We take the government's argument to mean that because the stolen-gun offense-level increase is "fundamentally distinct" from a crime, it is no different from any other factor a court may constitutionally consider in formulating a defendant's sentence--mens-rea requirement or not. United States v. Murphy, 96 F.3d 846, 849 (6th Cir. 1996) (distinguishing Staples, finding mens-rea-less offense-level increase did not violate due process). Besides, says the government, every other circuit that has considered Lasalle's due process notice argument has rejected it, and so it urges us to reject the argument, too.[2] See United States v. Thomas, 628 F.3d 64, 69 (2d Cir. 2010); United States v. Mobley, 956 F.2d 450, 454 (3d Cir. 1992) (defendant's due process argument is "constitutional wishful thinking"); United States v. Singleton, 946 F.2d 23, 26 (5th Cir. 1991); Murphy, 96 F.3d at 849; United States v. Schnell, 982 F.2d 216, 220 (7th Cir. 1992); United States v. Goodell, 990 F.2d 497, 499 (9th Cir. 1993); United States v. Richardson, 8 F.3d 769, 770 (11th Cir. 1993); see

---

[2] Although we have not previously addressed the question at issue here, we have applied mens-rea-less offense-level increases in the past over similar arguments that we should not. See United States v. Evano, 553 F.3d 109, 112 (1st Cir. 2009) (rule of lenity does not require addition of mens-rea requirement to identity theft enhancement); United States v. Figuereo, 404 F.3d 537, 541 (1st Cir. 2005) (no plain error in applying mens-rea-less Guidelines offense-level increase for being found in the United States because it was not an element of the offense, and other circuits had found the increase constitutional).

also <u>United States</u> v. <u>Taylor</u>, 659 F.3d 339, 343-44 (4th Cir. 2011) (stolen firearm offense-level increase not "inconsistent with federal law").

Here's our take. Lasalle argues that the same due process notice principles that apply to criminal statutes should apply to the Sentencing Guidelines' enhancements, but he gives us no reason to believe the two are analogous. The closest thing to guiding authority he cites is <u>Staples</u>, 511 U.S. at 605--a case about a criminal <u>statute</u>--where the Court read an element of mens rea into a statute to avoid a notice-based due process violation like the one Lasalle says he suffered here. The statute at issue in <u>Staples</u> prohibited the ownership of unregistered machineguns, but did not require the government to prove the defendant knew his gun was a machinegun to convict. Congress can omit an element of mens rea when it makes clear that's what it intended to do, the Court reasoned, but the <u>Staples</u> statute was ambiguous on this point.[3] And without an element of mens rea, the statute "would

---

[3] Indeed, in the case of so-called "public welfare" or "regulatory" offenses, even "congressional silence concerning the mental element of the offense [may] be interpreted as dispensing with conventional mens rea requirements." <u>Staples</u>, 511 U.S. at 607. Where a statute regulates inherently dangerous objects--like hand grenades, narcotic drugs, or toxic waste--congressional silence on the element of mens rea is often understood to mean that the defendant should be on notice that his conduct is subject to regulation, and that Congress intended to put the burden on the defendant to figure out the nature and extent of that regulation. <u>Id.</u> In its kitchen-sink response to Lasalle's appeal, the government argues that the stolen-firearm Guidelines provision is

impose criminal sanctions on a class of persons whose mental state--ignorance of the characteristics of weapons in their possession[, that they were machineguns]--makes their actions entirely innocent."  Id. at 614-15.  So, without a mens-rea element, the defendant would not have notice that his actions would break the law, and importantly, would have no opportunity to conform his conduct to the law.

The problem for Lasalle is that the Staples rationale does not apply to the Sentencing Guidelines because the Guidelines are advisory.  That means that no matter the defendant's Guidelines range, "the sentencing court retains discretion to impose [an] enhanced [or reduced] sentence" within the statutory range set by the defendant's crime of conviction.  Beckles v. United States, 137 S. Ct. 886, 894 (2017); see Singleton, 946 F.2d at 26.  This Guidelines provision has no effect on that statutory sentencing range; it only guides the "sentencing court's quest to formulate a proper sentence."  Murphy, 96 F.3d at 849 (quoting Singleton, 946 F.2d at 26).  The statute defining the crime limits the

_____

also a "public welfare" regulatory measure.  Of course, Staples itself was about a firearm (a machinegun, at that).  And the Staples court expressly rejected the argument that a firearm is the type of inherently dangerous object that should put a defendant on notice that his possession of it would be subject to regulation. Id. at 609-612 ("[G]uns generally can be owned in perfect innocence.").  So, even if the Staples reasoning applied to the Guidelines, we think this argument would be doomed.

- 10 -

sentencing court's discretion and provides "[a]ll of the notice required" by the due process clause. Beckles, 137 S. Ct. at 894.

That makes sense--after all, by the time the Guidelines appear on the horizon, the defendant has already been convicted of (or like Lasalle, pled guilty to) a crime that itself includes an element of mens rea. Indeed, "[c]riminal intent is an element of the crime of possession of a gun by a convicted felon, and this element was established by [Lasalle's] guilty plea of knowing possession of the gun." Singleton, 946 F.2d at 26 (emphasis omitted). So unlike a mens-rea-less criminal statute, "the Guidelines 'may compound the punishment for the offense, but [they] fall far short of criminalizing apparently innocent conduct.'" United States v. Ray, 704 F.3d 1307, 1312 (10th Cir. 2013) (quoting United States v. Saavedra, 523 F.3d 1287, 1289 (10th Cir. 2008)); accord Murphy, 96 F.3d at 848-49. This is no novel conclusion: as the government correctly notes, every other circuit to consider this Guidelines sentencing enhancement agrees that the mens-rea-less increase applies without running afoul of a defendant's constitutional rights.

One more thing. Even if we assumed that the Staples rationale applied to the Guideline, it would not help Lasalle because whereas the statute in Staples was ambiguous on its mens-rea requirement, the mens-rea requirement in the offense-level increase here was intentionally omitted. See Staples, 511 U.S. at

- 11 -

605 (considering plain language of the statute first). According to its Application Note, the increase "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S.S.G. § 2K2.1, cmt. 8(B). This commentary is "authoritative unless it violates the Constitution or a federal statute"--and as we explained above it does not violate the former, and as we explain below it does not violate the latter. United States v. LaBonte, 520 U.S. 751, 757 (1997) (citation omitted). The history of the Guideline itself confirms that the omission was intentional: it once applied only when the defendant "knew or had reason to believe" the firearm was stolen, but the requirement was eliminated in subsequent amendments. Goodell, 990 F.2d at 499 n.2 (noting that 1989 amendments eliminated scienter requirement from the Guideline's text); accord Mobley, 956 F.2d at 452.

The stolen-firearm offense-level increase does not violate Lasalle's due process rights.

### 2) The Gun Control Act

Undeterred, Lasalle floats his next argument about the stolen-firearm offense-level increase: without a mens-rea requirement, it is arbitrary and capricious because it is contrary to the congressional intent demonstrated in the Gun Control Act. Lasalle points out that the Act criminalized a slew of gun-related acts, and these crimes almost always include an element of mens rea. So, he says, the Act evidences a congressional policy

- 12 -

requiring an element of mens rea in gun-related crimes. Indeed, even the Act's stolen-firearm provisions, 18 U.S.C. § 922(i) and § 922(j), require the government to prove mens rea to convict. Because the Guidelines' stolen-gun enhancement does not include an element of mens rea, Lasalle says it is contrary to Congress' intent, and so it is invalid. The government, on the other hand, says that the mens-rea-less offense-level increase is "not inconsistent" with the intent behind the Gun Control Act because it advances Congress' objective of controlling firearms. Schnell, 982 F.2d at 221. We think so, too.

The purpose of the Gun Control Act is to keep "firearms out of the hands of categories of potentially irresponsible persons, including convicted felons." Barrett v. United States, 423 U.S. 212, 220 (1976); Mobley, 956 F.2d at 453. The Act imposes additional penalties to halt the trade of stolen guns, which, as the government points out, are more likely to be used to commit crimes and harder for police to trace. See 18 U.S.C. § 922(i), (j); Mobley, 956 F.2d at 454. Thus a defendant who has just been convicted of (or pled guilty to) a crime he committed using a stolen gun poses a "heightened danger," and the stolen-firearm offense-level increase advances the Act's purpose by imposing an additional penalty consistent with that danger. Mobley, 956 F.2d at 454; accord Schnell, 982 F.2d at 220. The offense-level increase is not contrary to the purpose of the Gun Control Act.

- 13 -

### 3) The Sentencing Reform Act

In his last argument about the stolen-gun offense-level increase, Lasalle reprises his arbitrary-and-capricious tune, but this time he says the enhancement is contrary to the purposes of a second federal statute--the Sentencing Reform Act. Under the Act, the Sentencing Commission must establish Guidelines that provide "fairness" in meeting the basic aims of sentencing: "(a) 'just punishment' (retribution), (b) deterrence, (c) incapacitation, [and] (d) rehabilitation." Rita v. United States, 551 U.S. 338, 348 (2007) (citing 18 U.S.C. § 3553(a)); 28 U.S.C. § 991(b)(1)(B). Lasalle claims the stolen-gun enhancement is not fair because it treats defendants who knew their guns were stolen the same as defendants like Lasalle who did not. And, he claims the enhancement does not meet any of the aims of the Act. Specifically, he says it does not meet the goal of deterrence because a defendant who does not know his gun was stolen cannot be deterred from using a stolen gun. (As to the other aims of sentencing, he doesn't bother to develop his argument, so we don't bother to address it. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").) The government counters that there are good reasons for the offense-level increase--stolen guns are especially dangerous in the hands of criminals--so the increase is not

arbitrary and capricious.  Once again, we think the government has the better argument.

The offense-level increase is not arbitrary or contrary to the Act's purpose of fairness in sentencing because it is related to the defendant's culpability.  See Mobley, 956 F.2d at 456.  As we explained above, stolen firearms present special dangers, especially in the hands of convicted felons (like Lasalle) who cannot legally own any gun.  "One, especially a convicted felon, is thus expected to exercise caution in the purchase of firearms and to inquire as to the gun's origin.  One can check easily whether or not a gun has been stolen, and the failure to do so reasonably may add to the purchaser's punishment."  Id.  The Sentencing Commission could reasonably conclude that a defendant in possession of a stolen gun is more culpable than a defendant in possession of a legitimate one.

And, contrary to Lasalle's claims, we think the mens-rea-less application of the stolen-gun offense-level increase advances the deterrence component of the sentencing calculus.  "[A]s criminals . . . learn that [they may face a higher Guidelines range, and likely] additional punishment for possessing a stolen gun, regardless of whether they knew the gun was stolen, they will be further deterred from possessing any gun."  Thomas, 628 F.3d at 70 (emphasis omitted).  The Guidelines provision is not contrary to the purposes of the Sentencing Reform Act.

- 15 -

To sum up, the application of the mens-rea-less stolen-gun offense-level increase did not violate Lasalle's due process rights. And, the increase is not contrary to the purposes of the Gun Control Act or the Sentencing Reform Act, so it is not arbitrary or capricious. These arguments down, we move on to Lasalle's next claim.

**Relevant Conduct**

Lasalle next takes aim at the application of all three of his Guidelines offense-level increases. (As a reminder, they are the stolen-firearm increase we just described, plus one for the use of a firearm in connection with another felony under U.S.S.G. § 2K2.1(b)(6), and another for injuring a police officer under U.S.S.G. § 3A1.2(c)(1).) He gives three reasons why the offense-level increases are invalid, all stemming from the fact that the increases were based on conduct not charged in his indictment or included in the plea agreement: they (1) violate the purposes of the Sentencing Reform Act, (2) must be proven beyond a reasonable doubt, and (3) accounted for such a disproportionate part of his sentence that they violated his Sixth Amendment and due process rights. We consider all three legal arguments de novo, United States v. Doe, 741 F.3d 217, 235 (1st Cir. 2013), and reject each in turn.

## 1) The Sentencing Reform Act

Lasalle's first argument--that the enhancements are contrary to the language and purpose of the Sentencing Reform Act-- is another variation on a theme we just discussed above. According to Lasalle, the Act requires the Guidelines to provide just punishment for "the offense," meaning the offense of conviction (Lasalle's offense was being a felon in possession of a firearm). 18 U.S.C. § 3553(a)(1), (a)(2)(A). But, the so-called "relevant conduct" offense-level increases allow punishment for uncharged crimes that are different than the offense of conviction (in Lasalle's case, using a stolen gun, using a gun in the commission of another felony, and injuring a police officer). So, he concludes, the relevant conduct enhancements are inconsistent with the plain language and the purpose of the Act: to appropriately punish only the substantive offense. For its part, the government argues that the relevant conduct offense-level increases punish a defendant "only for the fact that the present offense[, the offense of conviction,] was carried out in a manner that warrants increased punishment, not for a different offense (which that related conduct may or may not constitute)." Witte v. United States, 515 U.S. 389, 403 (1995) (emphasis omitted).

Once again, we believe the government has the better argument. Indeed, we have previously rejected Lasalle's claim that the relevant conduct provisions are contrary to the

Guidelines' history and purpose. United States v. Lombard, 72 F.3d 170, 176 (1st Cir. 1995). As we have explained, and reaffirm now, "[t]he Guidelines were not intended to discontinue the courts' historical practice of considering the relevant circumstances of the defendant's real conduct, whether those circumstances were specifically charged or not." Id. Indeed, a sentencing court may consider relevant conduct that constitutes another offense, even if the defendant has been acquitted of that offense, so long as it can be proven by a preponderance of the evidence. Id.; United States v. Watts, 519 U.S. 148, 154, 167 (1997) (Guidelines permit consideration of acquitted conduct consistent with the Sentencing Reform Act). The plain language of the Act likewise provides that a defendant's sentence should reflect "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." 28 U.S.C. § 994(c)(2). That is what Lasalle's relevant conduct increases do. Lasalle's offense-level increases are not contrary to the plain language or the purpose of the Sentencing Reform Act.

### 2) Beyond a Reasonable Doubt Standard

As for his second argument about the relevant conduct offense-level increases--that they must be proven beyond a reasonable doubt--we have already rejected this argument, too. Facts underlying Guidelines offense-level increases need only be proven by a preponderance of the evidence. United States v.

_Malouf_, 466 F.3d 21, 26 (1st Cir. 2006). Lasalle says we must reconsider our position in light of _Peugh v. United States_, 133 S. Ct. 2072 (2013). _Peugh_, 133 S. Ct. at 2088, holds that the retroactive application of revised Guidelines that results in a higher sentencing range violates the Ex Post Facto Clause and a defendant's due process rights because it creates a "significant risk" of a higher sentence. Lasalle seizes onto the fact that, like the retroactive application of a higher Guidelines range, the application of Guidelines enhancements based on uncharged conduct also creates a "significant risk" of a higher sentence. So reasoning by analogy, Lasalle claims that _Peugh_ means his due process rights were violated, too. The government disagrees, and so do we.

In _Malouf_, we found that due process and the Sixth Amendment are satisfied where sentencing facts are found by a preponderance of the evidence because "sentencing courts have always operated without constitutionally imposed burdens of proof"; only facts that change the statutory sentencing range or create a separate offense with a separate penalty must be proven beyond a reasonable doubt. 466 F.3d at 26-27 (quoting _McMillan_, 477 U.S. at 92 n.8). _Peugh_ does not undermine this holding. In fact, _Peugh_ rejected the argument that its Ex Post Facto analysis had any bearing on "when a given finding of fact is required to make a defendant legally eligible for a more severe penalty," the

question at issue in Malouf.  133 S. Ct. at 2088.  And post-Peugh developments in sentencing law show that the preponderance standard is still afloat.  See, e.g., Alleyne, 133 S. Ct. at 2163 (holding, one week after Peugh, that facts that do not increase minimum or maximum punishment need not be found beyond a reasonable doubt).  Peugh provides no reason at all for us to believe the Malouf panel would "change its collective mind," so Lasalle's ship is sunk.  Malouf, 466 F.3d at 27 (quoting United States v. Guzmán, 419 F.3d 27, 31 (1st Cir. 2005)).

### 3) The Tail Which Wags the Dog

In his third argument, Lasalle claims the relevant conduct offense-level increases accounted for such a disproportionate part of his sentence that they overshadow the punishment for his crime and have become the "tail which wags the dog of the substantive offense."  McMillan, 477 U.S. at 88.  He urges us to reject what he calls the "narrow and formulaic" reading of Alleyne and Apprendi, under which only facts that change the statutory sentencing range are elements that must be proven beyond a reasonable doubt.  Instead, he believes we should read these cases to mean that any enhancement for an uncharged or unconvicted crime that dramatically increases a defendant's Guidelines range should be proven beyond a reasonable doubt.  The facts underlying Lasalle's offense-level increases were not so proven:  the preponderance-found facts resulted in a significant increase in

his sentence over what was recommended in the plea bargain, therefore Lasalle claims the offense-level increases violate his Sixth Amendment and due process rights. The government, for its part, emphasizes that Alleyne itself rejected the very argument Lasalle floats here: "broad sentencing discretion, informed by judicial factfinding," the Court stressed, "does not violate the Sixth Amendment." Alleyne, 133 S. Ct. at 2163.

Here's what we think. At the outer limits, Guidelines offense-level increases based on uncharged crimes might violate a defendant's Sixth Amendment and due process rights if the additional increases are responsible for such a disproportionate share of the sentence that they become the "tail which wags the dog of the substantive offense." Lombard, 72 F.3d at 176 (quoting McMillan, 477 U.S. at 88). But as far as we can tell, we have recognized this concern only once before, in Lombard, 72 F.3d at 175, and Lasalle has absolutely nothing in common with that defendant. The Lombard defendant was convicted of a firearms offense with no statutory maximum, and his relevant conduct was a murder. Although most relevant conduct provisions increase the base offense level, the Lombard Guideline required the court to calculate the base offense level "as if his offense of conviction had been murder." Id. at 177 (emphasis in original). The result: instead of 262 to 327 months, the Guidelines dictated life in prison. What's more, the district court thought it lacked the

authority to impose anything less than a life sentence (remember, Lombard was decided before United States v. Booker, 543 U.S. 220, 245 (2005), made clear that the Guidelines are advisory). We found U.S.S.G. § 5K2.0 permitted the district court to consider a downward departure in an "extraordinary case," and the due process implications of the defendant's life sentence under the circumstances made Lombard extraordinary, so we vacated the sentence and remanded the case so the district court could reconsider the defendant's sentence. Lombard, 72 F.3d at 183-87. But we made clear that Lombard was "at the boundaries of constitutional sentencing law." Id. at 187. Lombard warranted resentencing only because of the extraordinary confluence of factors that ratcheted up his Guidelines range, plus the district court's failure to recognize that it could consider a downward departure from the constitutionally suspect range. "Absent [these] special circumstances . . . no comparable concerns would be raised by cases involving even sizeable sentence increases based on . . . uncharged or acquitted conduct." Id. at 186–87.

Lasalle's sentencing range was not determined by an extraordinary confluence of factors like we saw in Lombard. Lasalle's base offense level was set by the crime he pled guilty to, being a felon in possession of a firearm. His offense-level increases only upped his base offense level; they did not displace his pled-to crime in the calculations. U.S.S.G. §§ 2K2.1(b)(4)(A),

2K2.1(b)(6), 3A1.2(c)(1).  Most critically, his crime came with a ten-year statutory maximum, and that is the sentence he received. Furthermore, unlike Lombard, Lasalle was sentenced long after Booker, and the district court recognized its discretion to sentence Lasalle outside of the Guidelines range.  Lasalle's situation does not compare--indeed he makes no effort to explain how he might be similarly-situated to Lombard--so Lombard helps Lasalle not one jot.

That leaves Lasalle's now much-rehashed argument that we should expand our understanding of Alleyne and Apprendi to require a beyond-a-reasonable-doubt finding of facts that enhance the Guidelines range.  Yet we have repeatedly considered and rejected this argument.  United States v. Cox, 851 F.3d 113, 120 (1st Cir. 2017) (preponderance standard does not violate Fifth Amendment due process or Sixth Amendment rights); United States v. Ramírez-Negrón, 751 F.3d 42, 48 (1st Cir. 2014) (Alleyne-based argument that sentencing facts must be found beyond a reasonable doubt is "meritless"); Doe, 741 F.3d at 234 n.12 (defendant's "tail which wags the dog" argument was foreclosed by Alleyne and Apprendi because judicial factfinding did not change statutory sentencing range).  Alleyne and Apprendi do not require sentencing facts that do not change the statutory sentencing range to be found beyond a reasonable doubt.

- 23 -

To recap, the relevant conduct offense-level increases are not arbitrary or contrary to the purposes of the Sentencing Reform Act. And, neither Peugh nor Lasalle's take on Alleyne and Apprendi require the facts supporting relevant conduct offense-level increases to be found beyond a reasonable doubt. Lasalle's relevant conduct offense-level increases did not violate his Sixth Amendment or due process rights. With that, we turn to his next argument.

### Reasonableness of the Sentence

Lasalle takes his next pitch at the procedural and substantive reasonableness of his sentence. The district court committed procedural error, he says, because (1) the court erred in relying on the unreliable PSR to support the offense-level increases, and (2) the court inadequately explained its reasons for the sentence. He continues, his sentence is substantively unreasonable because it violates the parsimony principle, meaning it is greater than necessary to achieve the goals of sentencing. The government, for its part, takes the opposite position on each point. To do our job in assessing the reasonableness of a sentence, we check for procedural error first, and if none is found, we move on to substantive reasonableness. United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008).

### 1) Procedural Reasonableness

Lasalle first complains that the PSR was unreliable because its author did not identify the specific sources (the who-said-what) of the information relied on, opting instead to describe the sources as "Reports of Investigation and all other available information." And if this allegedly unreliable PSR gets jettisoned, he says the enhancements--for using a stolen firearm, in connection with another felony, and injuring a police officer--are not supported by a preponderance of the evidence. The government contends that the PSR--that is, the unobjected-to PSR--was reliable enough to support the application of the offense-level increases. We agree. Keeping in mind that we generally review factual findings at sentencing for clear error, we espy none here.[4] See Cox, 851 F.3d at 124; United States v. Occhiuto, 784 F.3d 862, 868 (1st Cir. 2015).

At sentencing, traditional rules of evidence do not apply and the court has broad discretion to consider any

---

[4] Lasalle did object to the PSR below, but his challenges largely echo the constitutional challenges he presents before us, and indeed his counsel conceded at sentencing that his objections were "legal arguments about the application" of the offense-level increases, not the PSR's factual recitation. The parties now dispute whether Lasalle's objections below encompassed the point he raises on appeal. If they did not, we would review for plain error. See United States v. Dunbar, 553 F.3d 48, 64 (1st Cir. 2009). But despite their dispute, both parties assume the less-stringent clear error standard of review applies. So, we give Lasalle the benefit of the doubt and review this claim for clear error.

information that has "sufficient indicia of reliability to support its probable accuracy." United States v. Brewster, 127 F.3d 22, 27 (1st Cir. 1997) (quoting U.S.S.G. § 6A1.3); accord United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010). "Generally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing." United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003) (citation omitted). The defendant bears the burden of disputing the PSR's factual findings, and absent an objection "[]supported by countervailing proof," the district court usually may accept the findings in the PSR without further inquiry. Occhiuto, 784 F.3d at 868 (quoting Cyr, 337 F.3d at 100); see Fed. R. Crim. P. 32(i)(3)(A) (sentencing court "may accept any undisputed portion of the [PSR] as a finding of fact"); United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993) ("A defendant who accepts the probation department's configuration of the sentencing record without contesting the facts set forth in the [PSR] can scarcely be heard to complain when the sentencing court uses those facts in making its findings."), superseded in part by rule, Fed. R. App. P. 4(b)(5), as recognized in United States v. Gonzalez-Rodriguez, 777 F.3d 37, 38 (1st Cir. 2015).

Against this backdrop, Lasalle's claim founders. As we already noted, he did not lodge an objection "[]supported by countervailing proof" (or otherwise object to the PSR's reliability below), Occhiuto, 784 F.3d at 868, and we think

Lasalle's PSR bears sufficient indicia of reliability that the sentencing court was on solid ground in relying on it. Contrary to Lasalle's position, the use of the phrase "Reports of Investigation and all other available information" does not undercut the presumptive reliability of the PSR's findings because the sources of most of the information in the report are obvious. Specifically, the PSR relies heavily on Lasalle's morning-after confession to police at the hospital, where Lasalle admitted the following: he broke into a house after dusk, stole some jewelry and chicken, encountered police and "exchanged fire" with them, and was wounded in the right leg.

Moreover, although the PSR does not explicitly identify the injured officer as the source of the information that Lasalle was the shooter, it is apparent from that section of the PSR that the story was related by the injured officer, and when the sentencing court inquired, the government confirmed that the injured officer would testify to these facts. Plus, the PSR's account is corroborated in large part by the statement of facts from the plea agreement, also summarized in the PSR, which explains that the police announced their presence and ordered Lasalle to stop, he did not, one of the police officers was shot, and the other shot Lasalle. The PSR also found that the same revolver Lasalle used that day, described in the police reports and the plea agreement, was stolen. We reiterate here that Lasalle did

not object to the factual basis of any of these findings. Under these circumstances, the sentencing court was entitled to rely on the PSR. That means the court's factual findings in support of Lasalle's offense-level increases were not clearly erroneous.

In his second procedural reasonableness claim, Lasalle argues that the court inadequately explained its sentencing reasoning. The government urges us to draw the opposite conclusion. We review Lasalle's unpreserved argument for plain error, meaning he must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Upon review of the sentencing proceedings, we find no error, and certainly not one that was clear or obvious. A sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). But, "[i]t is clear beyond peradventure that the . . . court need only identify the main factors behind its decision." Vargas-García, 794 F.3d at 166 (citing United States v. Turbides-Leonardo, 468 F.3d 34, 40-41 (1st Cir. 2006)). It need not be "precise to the point of pedantry"--indeed, even a "skimpy" explanation will do--

so long as "the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing." Id. (quoting United States v. Fernández-Cabrera, 625 F.3d 48, 54 (1st Cir. 2010)). That is what happened here. The sentencing court focused on "discrete aspect[s]" of Lasalle's conduct--how the offense was committed, including the fact that he shot a police officer with the gun in his possession--as well as his extensive criminal history. The court touched on the importance of respect for the law, one of the aims of sentencing, in its explanation of reasons. See 18 U.S.C. § 3553(a)(2)(A). And in light of the court's focus on how the offense was committed, it is also apparent to us from the transcript as a whole that it acted with a second aim of sentencing in mind: the need for the sentence to reflect the seriousness of Lasalle's offense. See id. We see no error here-- that claim also capsizes.

The sentencing court did not clearly err in relying on the PSR, and it did not commit an error (let alone a "clear or obvious" one) in explaining its sentencing rationale. So, we turn to Lasalle's substantive reasonableness claim.

**2) Substantive Reasonableness**

Lasalle contends that his sentence was substantively unreasonable because it violates the parsimony principle, meaning it is longer than necessary to achieve the aims of sentencing.

- 29 -

The government replies that the sentence is long enough, but not too much. We review Lasalle's substantive reasonableness claim for abuse of discretion, but find none. United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015).[5]

A sentence is substantively reasonable if the court gives a "plausible rationale" and reaches a "defensible result," United States v. Díaz-Arroyo, 797 F.3d 125, 129 (1st Cir. 2015), cert. denied, 136 S. Ct. 272 (2015), and here we find both. As to the sentencing court's rationale, Lasalle received a sentence within a properly calculated Guidelines range, so to prevail he "must adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons." United States v. Cortés-Medina, 819 F.3d 566, 572 (1st Cir.), cert. denied, 137 S. Ct. 410 (2016) (quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011)). Lasalle has not. As we just explained, the sentencing court's rationale was plausible. What's more, the result reached here is defensible. A sentencing court must "impose a sentence sufficient, but not

---

[5] The parties dispute whether Lasalle's objections below were adequate to preserve his substantive reasonableness claim. We review preserved substantive reasonableness claims for abuse of discretion. Ruiz-Huertas, 792 F.3d at 228. But if unpreserved, it is unclear whether abuse of discretion or the more stringent plain error standard applies. Id.; Díaz-Arroyo, 797 F.3d 128. We need not decide that question today because Lasalle cannot prevail under either standard.

- 30 -

greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a). But, "[i]n most cases, there is not a single appropriate sentence but, rather, a universe of reasonable sentences." Rivera-González, 776 F.3d at 52. Under the totality of the circumstances, including the fact that Lasalle's Guidelines range initially exceeded ten years but was reduced to the crime's statutory maximum, we cannot say Lasalle's sentence falls outside of that universe. The district court did not abuse its discretion. See, e.g., United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014) (eight-and-a-half-year sentence for 18 U.S.C. § 922(g)(1) violation not unreasonable); United States v. Stebbins, 523 F. App'x 1, 6 (1st Cir. 2013) (ten-year § 922(g) sentence not substantively unreasonable in light of higher Guidelines range, circumstances of offense, and recidivism); United States v. Taylor, 540 F. App'x 16, 18 (1st Cir. 2013) (ten-year § 922(g) sentence not substantively unreasonable, despite being almost twice defendant's Guidelines range, given criminal history and nature of offense).[6]

---

[6] Lasalle also argues the sentence is substantively unreasonable for all of the reasons described above--in short, because it accounts for uncharged relevant conduct that was not described in the plea agreement. But as we have already explained, it was not error for the district court to apply the offense-level increases, which means they could be factored into the Guidelines range calculation. Discerning no other reason to further address these claims, we leave it at that. So, too, his claim that the parsimony principle is violated by the imposition of offense-level increases for conduct for which a sentence was imposed in state

- 31 -

**Ineffective Assistance of Counsel**

In his final plunge, Lasalle claims his counsel was ineffective because he failed to advise Lasalle to withdraw his guilty plea "while there was still an opportunity to do so" under Federal Rule of Criminal Procedure 11(d)(2), which allows for a plea to be withdrawn before the district court imposes its sentence. The argument goes like this: (1) Lasalle's plea bargain recommended a sentencing range of thirty to thirty-seven months, but (2) he got the statutory maximum because the sentencing judge applied offense-level increases that were not included in the plea, so (3) he might have been better off at trial because he might have been acquitted, ergo (4) his attorney was ineffective for failing to tell him to ditch the plea and roll the dice.

We cannot resolve his ineffective-assistance-of-counsel claim now, however, because he did not press this fact-specific claim to the district court. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Ofray-Campos, 534 F.3d 1, 34 (1st Cir. 2008) (quoting United States v.

---

court.  As we have repeatedly explained, it is not error for the district court to consider the circumstances of the offense. E.g., Cox, 851 F.3d at 121.

<u>Mala</u>, 7 F.3d 1058, 1063 (1st Cir. 1993)). That is so because "a trial judge is in the best position to evaluate the quality of legal representation in the first instance. Such an evaluation typically requires the resolution of factual issues as well as inquiries into other evidentiary matters that cannot effectively be handled for the first time by a court of appeals." <u>United States</u> v. <u>Costa</u>, 890 F.2d 480, 483 (1st Cir. 1989). Here, for instance, the government points out that the district court advised Lasalle that the plea bargain range was not binding, so Lasalle could be sentenced to the statutory maximum. But Lasalle points to nothing in the record to show what his attorney said about that fact. He only says that, at the very least, his attorney should have taken a break during the sentencing proceedings to ask if Lasalle wanted to withdraw his plea, but his attorney did not. The absence of a break is not enough for us to tell whether his attorney's performance fell below an objective standard of reasonableness. So, we dismiss his claim without prejudice to his right to raise it again later under 28 U.S.C. § 2255. <u>See</u> <u>United States</u> v. <u>Jones</u>, 778 F.3d 375, 390 (1st Cir. 2015).

## CONCLUSION

Lasalle's arguments do not persuade us to break from our precedents, nor do they persuade us that the law was incorrectly applied by the district court. So, we affirm Lasalle's sentence,

without prejudice to his right to raise his ineffective-assistance-of-counsel claim in a collateral proceeding.